JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff Chapman Excavating Co., Inc. ("Chapman") appeals from the order of the trial court which entered summary judgment in favor of defendant Fortney Weygant ("F W") in Chapman's action for recovery pursuant to a "pay-when-paid" provision in its contract with F W. F W cross-appeals and maintains that Chapman's action is barred because it did not arbitrate this claim. For the reasons set forth below, we reverse the order granting summary judgment to F W and remand this matter for further proceedings consistent with this opinion.
 {¶ 2} On November 9, 1998, F W, as general contractor, and Chapman, as subcontractor, entered into "Work Order 2" an agreement pursuant to which Chapman would provide various grading, excavation, erosion control and other work on the Cypress Equity Site, owned by Cypress/Cleveland I Ltd.
 {¶ 3} In relevant part, this agreement provided:
 {¶ 4} "4. a. All progress payments are conditioned upon the Sub furnishing to F W 1) a signed copy of this work order * * * Partial payments of the Subcontract Sum shall be made within ten (10) days after payment is received by F W from Owner[.]
 {¶ 5} "b. Final payment constituting the entire unpaid balance of the Subcontract Sum, shall be made by F W to the Sub when the Sub's work is fully performed in accordance with the requirements of the Contract Documents. * * *.
 {¶ 6} "* * *
 {¶ 7} "12. A Claim is a demand or assertion by Sub or F W seeking any remedy under, or adjustment or interpretation of, this work order. Any and all Claims by sub shall be made initially to F W's project manager in writing within twenty-one days of the event or occurrence giving rise to the claim. If a satisfactory resolution does not follow, or if forty-five days pass without a response from F W, the party making the claim may only pursue the claim further by filing a demand for arbitration * * * within twenty-one (21) days of F W's rejection of the claim, or within sixty-six (66) days of the initial filing of the claim if no response is made. * * *."
 {¶ 8} On April 1, 2003, Chapman filed this action against F 
W and alleged that, pursuant to the terms of the parties' agreement, F W is required to pay Chapman even if it is not paid by the owner of the project, and that F W owes it $257,127.78. Chapman asserted claims for breach of contract, unjust enrichment and action on account. F W denied liability and asserted, inter alia, that Chapman's claims were subject to mandatory arbitration.
 {¶ 9} On September 2, 2003, F W moved for summary judgment. Within this motion, F W asserted that it received its last progress payment from the owner, Cypress, on June 16, 2000. Since that time, F W issued three additional applications for payment to Cypress, and issued its request for final payment to Cypress in June 2002. Cypress has not paid F W, however, and on April 17, 2002, F W filed suit against Cypress in the Court of Common Pleas, see Fortney Weygant, Inc. v. Cypress/Cleveland I, Ltd.,et al., Cuyahoga Common Pleas Case No. 486273. F W claims that it is undisputed that Cypress owes F W $332,839.81 plus interest, and that F W anticipated reaching a settlement agreement with Cypress whereby it "will receive some payment up front, with the balance deferred over a period of time expected to stretch into 2005."
 {¶ 10} F W also asserted that on June 16, 2000, it made two progress payments to Chapman (Applications #7 and # 8). On September 2000, Chapman requested that F W pay an additional progress payment and final payment to Chapman under the Work Order. The record further reveals that in March 2001, a question arose as to whether Chapman had double billed for a portion of the work and F W was subsequently credited in the amount of $24,450. F W has made no further payments to Chapman, however.
 {¶ 11} F W further asserted that "[t]here is also no genuine issue of material fact that [F W] owes significant funds ($257,127.78) to Chapman for work performed on the Cypress Equity Project." Defendant's Motion for Summary Judgment at 4. F W acknowledged that its agreement with Chapman contains a "pay-when-paid" provision in which F W "made an absolute promise to pay Chapman, fixing payments by Cypress [the owner] to [F W] as reasonable time for [F W]'s payment to Chapman." Defendant's Motion for Summary Judgment at 7. F W insisted, however, that a "reasonable time" for payment "lasts until the prospect of payment from Cypress is impossible or, arguably, until [F W] demonstrates an unwillingness to pursue payment from Cypress.
 {¶ 12} F W also maintained that Chapman's claims were barred by operation of the parties' contract because Chapman did not demand arbitration within the sixty-six day limitation period.
 {¶ 13} In its brief in opposition, Chapman asserted that F 
W had failed to demonstrate that there was no genuine issue of material fact that a "reasonable time" for payment had not yet lapsed. Moreover, Carl Douglass, Jr., Chapman's Treasurer/Secretary, averred as follows:
 {¶ 14} "It is * * * expected that a reasonable time for final payment would be longer than the time period needed to process progress payments. On this job, progress payments were due within ten (10) days. * * * For final payment on this job, a `reasonable time' to wait before payment would be due would be thirty (30) days, but no more than sixty (60) days."
 {¶ 15} Chapman also asserted that the arbitration provision was waived when F W filed an answer in this matter, did not file a motion to stay proceedings pending arbitration, and engaged in extensive discovery. Chapman further claimed that F 
W was equitably estopped from invoking the arbitration provision, and Chapman presented evidence that F W's project manager repeatedly represented to Chapman that it was aggressively pursuing its rights against Cypress and would protect Chapman's rights. In addition, a F W representative had opined in deposition that demands for payment were not subject to the arbitration provision. In addition, counsel for Chapman averred that prior to trial, he inquired as to whether F W's attorneys would consent to arbitration but received no response from them. On December 15, 2003, the trial court entered summary judgment for F W. Relying upon the Article 4(a) of the parties' agreement, which pertains to "progress payments," the Court determined that payment was due under the "pay-when-paid" clause "within 10 days from the date F W receives payment from the owner."
 Chapman's Appeal {¶ 16} Chapman assigns the following error for our review:
 {¶ 17} "The trial court erred as a matter of law in granting F W's motion for summary judgment."
 {¶ 18} Within this assignment of error, Chapman asserts that the trial court erred in awarding summary judgment to F W because, inter alia, F W failed to meet its burden of proof. Chapman further asserts that the trial court erroneously converted the "pay-when-paid" provision into a "paid-if-paid" provision and incorrectly determined, in essence, that F W's "reasonable time" for payment would expire only when payment from Cypress becomes impossible.[1]
 {¶ 19} With regard to procedure, we note that appellate review of summary judgment is de novo. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105, 1996-Ohio-336,671 N.E.2d 241; Zemcik v. La Pine Truck Sales Equipment (1998),124 Ohio App.3d 581, 585, 706 N.E.2d 860. The Ohio Supreme Court set forth the appropriate test in Zivich v. Mentor Soccer Club,82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201, as follows:
 {¶ 20} "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679,1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt,75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264."
 {¶ 21} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385,1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.
 {¶ 22} With regard to the substantive law, we note that there is a distinction between "pay-when-paid" and "pay-if-paid" contract provisions. Under a "pay-if-paid" provision, the general contractor is required to pay a subcontractor only if the owner pays the general contractor; the risk of owner non-payment falls upon the subcontractor. Cf. Kalkreuth Roofing Sheet Metal v.Bogner Constr. Co. (Aug. 27, 1998), Perry App. No. 97 CA 59. Under a "pay-when-paid" clause, however, a general contractor agrees to pay a subcontractor within a period of time after the general is paid by the owner, and the risk of owner non-payment falls upon the general contractor. Power Pollution Services,Inc. v. Suburban Power Piping Corp. (1991), 74 Ohio App.3d 89,598 N.E.2d 69.
 {¶ 23} This Court discussed "pay-when-paid" contract provisions in Power Pollution Services, Inc. v. Suburban PowerPiping Corp., supra. In that case, the court held that a "pay-when-paid" clause "does not set a condition precedent to the general contractor's duty to pay the subcontractor, but rather constitutes an absolute promise to pay, fixing payment by the owner as a reasonable time for when payment to the subcontractor is to be made."
 {¶ 24} The Power Pollution Services opinion relied upon Thomas J. Dyer Co. v. Bishop Internatl. Eng. Co. (C.A. 6, 1962), 303 F.2d 655, which likewise dealt with a "pay-when-paid" provision. In Thomas J. Dyer Co., supra, the provision obligated the general contractor to pay the subcontractor in accordance with the following schedule: "3. The total price to be paid to Subcontractor shall be $109 Dollars ($115,000.00) lawful money of the United States, no part of which shall be due until five (5) days after Owner shall have paid Contractor therefor * * * *."
 {¶ 25} In analyzing this provision, the Court stated:
 {¶ 26} "[w]e come to the crucial issue in the case, namely, whether, as contended by the appellant, paragraph 3 of the subcontract is to be construed as a conditional promise to pay, enforceable only when and if the condition precedent has taken place, which in the present case has not occurred, or, as contended by the appellee, it is to be construed as an unconditional promise to pay with the time of payment being postponed until the happening of a certain event, or for a reasonable period of time if it develops that such event does not take place.
 {¶ 27} "* * *
 {¶ 28} "In the case before us we see no reason why the usual credit risk of the owner's insolvency assumed by the general contractor should be transferred from the general contractor to the subcontractor. It seems clear to us under the facts of this case that it was the intention of the parties that the subcontractor would be paid by the general contractor for the labor and materials put into the project. We believe that to be the normal construction of the relationship between the parties. If such was not the intention of the parties it could have been so expressed in unequivocal terms dealing with the possible insolvency of the owner. North American Graphite Corp. v.Allan, 87 U.S.App.D.C. 154, 184 F.2d 387, 390. Paragraph 3 of the subcontract does not refer to the possible insolvency of the owner. On the other hand, it deals with the amount, time and method of payment, which are essential provisions in every construction contract, without regard to possible insolvency. In our opinion, paragraph 3 of the subcontract is a reasonable provision designed to postpone payment for a reasonable period of time after the work was completed, during which the general contractor would be afforded the opportunity of procuring from the owner the funds necessary to pay the subcontractor. Stewartv. Herron, 77 Ohio St. 130, 149, 82 N.E. 956. To construe it as requiring the subcontractor to wait to be paid for an indefinite period of time until the general contractor has been paid by the owner, which may never occur, is to give to it an unreasonable construction which the parties did not intend at the time the subcontract was entered into. (Citations omitted)."
 {¶ 29} Accord Franklin Consultants, Inc. v. Osborne (Oct. 1, 1979), Lake App. No. 7-050 (provision that "OWNER agrees to pay the CONSULTANT final payments upon review and final approval of the plans" is not a condition precedent but merely deals with the time of payment and is designed to postpone payment for a reasonable period of time after the work was completed.).
 {¶ 30} In determining what constitutes a "reasonable time" for payment under such provisions, courts have (1) looked to other provisions within the contract at issue which set forth the time periods for performance of analogous acts; and (2) have determined, as a matter of law, when a reasonable time has elapsed.
 {¶ 31} In ADF Int'l, Inc. v. Baker Mellon Stuart Constr.,Inc., Case No. 6:98-cv-1310-Orl-31B, (M.D. Fla. Dec. 28, 2000), 2000 U.S. Dist. LEXIS 22597, the court used the first method in order to determine whether a "reasonable time" for payment had elapsed. The Court stated:
 {¶ 32} "As discussed above, the "Pay When Paid" clause in the SSS did not excuse BMS from paying ADF when BMS did not receive payment from UCDP. Under Florida law, when a "Pay When Paid" clause fails to shift the risk of nonpayment — as happened in the instant case — courts are required to construe the clause as establishing a reasonable time for payment. The particular "Pay When Paid" clause at issue here required that ADF be paid "within 120 calendar days," and thus this Court construes the clause as setting a reasonable time for payment at 120 days from BMS's submission of ADF's requisition to UCDP."
 {¶ 33} In R L Acoustics v. Liberty Mut. Ins. Co.
(September 27, 2001) Conn. Super., LEXIS 2854, the court employed the second method and determined that a "reasonable time" for payment had elapsed where the contractor had waited six months for payment. Accord Framingham Heavy Equip. Co. v. John T.Callahan Sons, No. 02-P-1159 (2003) 61 Mass. App. Ct. 171,807 N.E.2d 851 (trial judge properly determined that defendant general contractor breached "pay-when-paid" clause in subcontract by failing to pay plaintiff subcontractor for four months.) See, also, Lafayette Steel Erectors, Inc. v. Roy Anderson Corp.,71 F. Supp.2d 582; (S.D. Miss. 1997) LEXIS 23587,(a "reasonable time" for payment had elapsed where the subcontractor waited three and one half years for payment.).
 {¶ 34} In accordance with the foregoing, we hold that the trial court erred in entering summary judgment for F W. Under the facts of this case, F W failed to demonstrate that a reasonable time for payment had not lapsed, and in opposition, Carl Douglass, Jr., Chapman's Treasurer/Secretary, averred "that a reasonable time for final payment would be longer than the time period needed to process progress payments * * *. For final payment on this job, a "reasonable time" to wait before payment would be due would be thirty (30) days, but no more than sixty (60) days." Moreover, our research indicates that a reasonable time has lapsed as a matter of law under both the method which determines such time with reference to other contractual provisions and under the method which considers the period of time at issue, as a matter of law. Chapman's assignment of error is well-taken.
 F W's Cross-Appeal {¶ 35} F W's assignment of error states:
 {¶ 36} "The trial court erred, as a matter of law, in finding that the arbitration provisions of the contract at issue do not apply."
 {¶ 37} Within its cross-appeal, F W contends that the trial court committed reversible error because it did not accept its argument that Chapman's claims were barred by Chapman's failure to request arbitration of this matter within the sixty-six (66) day limitations period set forth in Paragraph 12 of the Work Order.
 {¶ 38} Either party to an arbitration agreement may waive it.Mills v. Jaguar-Cleveland Motors, Inc. (1980),69 Ohio App.2d 111, 113, 430 N.E.2d 965.
 {¶ 39} "The essential question is whether, based on the totality of the circumstances, the party seeking arbitration has acted inconsistently with the right to arbitrate." Thornton v.Haggins, Cuyahoga App. No. 83055, 2003-Ohio-7078, quotingHarsco Corp. v. Crane Carrier Co. (1997), 122 Ohio App.3d 406,410, 701 N.E.2d 104. In order to determine whether a defendant acted inconsistently with arbitration, the court should consider: "(1) any delay in the requesting party's demand to arbitrate via a motion to stay judicial proceedings and an order compelling arbitration; (2) the extent of the requesting party's participation in the litigation prior to its filing a motion to stay the judicial proceeding, including a determination of the status of discovery, dispositive motions, and the trial date; (3) whether the requesting party invoked the jurisdiction of the court by filing a counterclaim or third-party complaint without asking for a stay of the proceedings; and (4) whether the non-requesting party has been prejudiced by the requesting party's inconsistent acts." Id. quoting Phillips v. Lee Homes,Inc. (Feb. 17, 1994), Cuyahoga App. No. 64353, citing Rock v.Merrill, Lynch, Pierce, Fenner Smith, Inc. (1992),79 Ohio App.3d 126, 606 N.E.2d 1054; Brumm v. McDonald Co. Securities,Inc. (1992), 78 Ohio App.3d 96, 603 N.E.2d 1141.
 {¶ 40} Estoppel may be raised in defense of a claim that a matter is barred for failure to arbitrate. Cf. Rock v. Merrill,Lynch, Pierce, Fenner Smith, Inc., supra. An estoppel arises where one is concerned in or does an act which in equity and good conscience will preclude him from averring anything to the contrary, as where another has been innocently misled into some detrimental change of position. In re Basmajian's Estate
(1944), 142 Ohio St. 483, 52 N.E.2d 985.
 {¶ 41} In Dean-Kitts v. Dean, Greene App. No. 2002CA18, 2002-Ohio-5590, the court explained the doctrine as follows:
 {¶ 42} "The substance of estoppel is the inducement of another to act to his prejudice, and "acquiescence" embraces all elements of estoppel and assent to the act or conduct of the other party with full knowledge, and "ratification" is confirmation after the act with full knowledge. Holmes v.Hrobon (1952), 93 Ohio App. 1, 61 Ohio Law Abs. 113, 61 Ohio Law Abs. 241, 103 N.E.2d 845."
 {¶ 43} In this matter, F W asserted that Chapman's claims are barred because Chapman did not seek arbitration as set forth in the Work Order. In opposition, Chapman presented evidence that F W's project manager repeatedly represented to Chapman that it was aggressively pursuing its rights against Cypress and would protect Chapman's rights, that a representative of F W opined in deposition that demands for payment were not subject to the arbitration provision, and that counsel for Chapman averred that prior to trial, he inquired as to whether F W's attorneys would consent to arbitration but received no response from them. This conduct, over a protracted period of time, induced Chapman to believe that arbitration was not required and that F W had acquiesced to Chapman's failure to invoke arbitration. Moreover, F W presented no evidence to dispute any of the foregoing.
 {¶ 44} In accordance with the foregoing, we are unable to conclude that the trial court erred in declining to accept F 
W's argument that Chapman's claims were barred by Chapman's failure to request arbitration of this matter within the sixty-six (66) day limitations period set forth in Paragraph 12 of the Work Order. Chapman's evidence demonstrated that F W induced it to believe that F W would fully protect its rights, that the arbitration provision was not applicable to Chapman's claim and that F W did not intend to demand that the issue be arbitrated. Moreover, Chapman's evidence indicated that it was prejudiced by these actions. Because F W failed to demonstrate that it was entitled to judgment as a matter of law pursuant to the arbitration provision, the trial court was not required to enter summary judgment for F W on this basis.
 {¶ 45} F W's counterclaim is without merit.
 {¶ 46} The judgment of the trial court is reversed and the matter is remanded for additional proceedings consistent with this opinion.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellants recover of said appellees their costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, A.J., and Sweeney, J., Concur.
[1] Chapman also asserts that the trial court erred in entering judgment for F W because it's motion for summary judgment was directed solely at its claim for breach of contract, and not its remaining claims for unjust enrichment and action on an account. Because we reverse and remand, this contention is now moot.