**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*Transtar Elec., Inc. v. A.E.M. Elec. Servs. Corp.*, **Slip Opinion No. 2014-Ohio-3095.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-3095

TRANSTAR ELECTRIC, INC., APPELLEE, *v.* A.E.M. ELECTRIC

SERVICES CORPORATION, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Transtar Elec., Inc. v. A.E.M. Elec. Servs. Corp.*, Slip Opinion No. 2014-Ohio-3095.]**

*Contracts—Condition precedent—When a contract provides that payment by a project owner to a general contractor for work performed by a subcontractor is a condition precedent to payment by the general contractor to the subcontractor, the provision is a pay-if-paid provision— The use of the term "condition precedent" in the payment provision of a contract between a general contractor and a subcontractor clearly and unequivocally shows the intent of those parties to transfer the risk of the project owner's nonpayment from the general contractor to the subcontractor.*

(No. 2013-0148—Submitted November 5, 2013—Decided July 17, 2014.)

APPEAL from the Court of Appeals for Lucas County,

No. L-12-1100, 2012-Ohio-5986.

_____

**SYLLABUS OF THE COURT**

1. When a contract provides that payment by a project owner to a general contractor for work performed by a subcontractor is a condition precedent to payment by the general contractor to the subcontractor, the provision is a pay-if-paid provision.

2. The use of the term "condition precedent" in the payment provision of a contract between a general contractor and a subcontractor clearly and unequivocally shows the intent of those parties to transfer the risk of the project owner's nonpayment from the general contractor to the subcontractor.

_____

**KENNEDY, J.**

{¶ 1} In this appeal from the Sixth District Court of Appeals, we consider whether a provision addressing payment of a subcontractor by a general contractor in a contract between appellant, A.E.M. Electric Services Corporation, the general contractor, and appellee, Transtar Electric, Inc., the subcontractor, that uses the term "condition precedent" is sufficient to establish a pay-if-paid payment provision. We hold that the use of the term "condition precedent" is an explicit statement of the parties' intent to transfer the risk of the project owner's nonpayment from A.E.M. to Transtar.

{¶ 2} A.E.M. advances one proposition of law: "The unambiguous language in the subcontract between the parties is a 'pay-if-paid' provision, which without payment by the owner, does not require the contractor to pay the subcontractor." For the reasons that follow, we hold that when a contract provides that payment by a project owner to the general contractor for work performed by a subcontractor is a condition precedent to payment by the general contractor to the subcontractor, the provision is a pay-if-paid provision. We further hold that the use of the term "condition precedent" in a payment provision

of a contract between a general contractor and a subcontractor clearly and unequivocally shows the intent of those parties to transfer the risk of the project owner's nonpayment from the general contractor to the subcontractor.

## I. Facts and Procedural History

{¶ 3} A.E.M., the general contractor, contracted with Transtar, the subcontractor, to provide electrical services for the installation of a pool at a Holiday Inn.

{¶ 4} Transtar fully performed the work under the contract, submitted invoices to A.E.M., and was paid $142,620.10 in 11 installments. However, A.E.M. did not pay Transtar for the last three invoices, totaling $44,088.90, because the owner of the project had failed to pay A.E.M. for the work performed by Transtar. A.E.M. argues that Section 4 of the contract is controlling and that it establishes a pay-if-paid payment provision. Section 4 of the contract reads:

> (b) The Subcontractor shall submit weekly certified payroll reports, and shall pay all workmen employed on the Project labor rates equal to or greater than those required by the Prime Contract. The weekly certified payroll reports shall set forth with particularity the number of hours that each employee of the Subcontractor has worked on the project.

> (c) The Contractor shall pay to the Subcontractor the amount due under subparagraph (a) above only upon the satisfaction of all four of the following conditions: * * * (iv) the Contractor has received payment from the Owner for the Work performed by the Subcontractor. **RECEIPT OF PAYMENT BY CONTRACTOR FROM THE OWNER FOR WORK PERFORMED BY SUBCONTRACTOR IS A CONDITION**

**PRECEDENT TO PAYMENT BY CONTRACTOR TO SUBCONTRACTOR FOR THAT WORK.**

(Capitalization and boldface sic.)

{¶ 5}  Transtar filed suit demanding judgment against A.E.M. for breach of contract, unjust enrichment, and money damages totaling $44,088.90, plus costs and prejudgment interest.

{¶ 6}  Both Transtar and A.E.M. filed motions for summary judgment. A.E.M. did not dispute the facts as asserted by Transtar. A.E.M. argued that Section 4 of the contract provided that it did not require A.E.M. to pay Transtar until the owner of the project paid A.E.M. for Transtar's work. The trial court agreed and granted summary judgment in favor of A.E.M., holding that Transtar's claims for payment failed as a matter of law.

{¶ 7}  The Sixth District Court of Appeals reversed. The court held that absent language making manifest the intent to shift the risk of nonpayment to the subcontractor, a provision for payment must be construed as an absolute promise on the part of the general contractor to pay the subcontractor within a reasonable time. The court then held that the payment provision in the contract between the parties was not specific enough to show that both parties understood and agreed that the risk of the owner's nonpayment would be borne by the subcontractor instead of the general contractor. The court further held that to shift the risk of the owner's nonpayment from the general contractor to the subcontractor, "[i]t must be made plain, in plain language, that a subcontractor must look to the owner for payment." 2012-Ohio-5986, 983 N.E.2d 399, ¶ 30 (6th Dist.). As a result, the general contractor was liable to the subcontractor for the work performed without regard to whether the general contractor had been paid by the owner.

## II.  Standard of Review

**{¶ 8}**  Our review of cases involving a grant of summary judgment is de novo.  *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 24. Summary judgment may be granted only when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) upon viewing the evidence in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party.  *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12.

## III.  Analysis

**{¶ 9}**  The cardinal principle in contract interpretation is to give effect to the intent of the parties.  *Skivolocki v. E. Ohio Gas Co.,* 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus.  "[W]e will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties."  *Sunoco, Inc. (R&M) v. Toledo Edison Co.,* 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37.

**{¶ 10}** Generally, there are two types of contractual provisions that establish the manner by which a general contractor pays a subcontractor for the subcontractor's work.  A general contractor can make an unconditional promise to pay the subcontractor, usually within a reasonable time to allow the general contractor to be paid.  *Thos. J. Dyer Co. v. Bishop Internatl. Eng. Co.,* 303 F.2d 655, 659 (6th Cir.1962).  An unconditional promise to pay is a pay-when-paid payment provision.  Such a promise is not dependent on or modified by the owner's nonpayment.

**{¶ 11}** Alternatively, the general contractor may make a conditional promise to pay the subcontractor that is enforceable only if a condition precedent

has occurred. *Id.* A conditional promise to pay is a pay-if-paid payment provision. This provision requires the general contractor to pay the subcontractor only if the owner pays the general contractor. Therefore, the risk of the owner's nonpayment is transferred to the subcontractor. *Chapman Excavating Co., Inc. v. Fortney & Weygandt, Inc.,* 8th Dist. Cuyahoga No. 84005, 2004-Ohio-3867, ¶ 22.

{¶ 12} A contract may include either a pay-when-paid or a pay-if-paid contract provision, but a contract cannot contain both.

{¶ 13} Courts in Ohio have upheld pay-if-paid payment provisions. *See N. Mkt. Assn., Inc., v. Case,* 99 Ohio App. 187, 132 N.E.2d 122 (10th Dist.1955); *Smith v. Shoemaker,* 81 Ohio Law Abs. 451, 162 N.E.2d 237 (C.P.1959).

{¶ 14} We begin our determination by examining *Dyer,* 303 F.2d 655; *Sloan & Co. v. Liberty Mut. Ins. Co.,* 653 F.3d 175 (3rd Cir.2011); and *Evans, Mechwart, Hambleton & Tilton, Inc. v. Triad Architects, Ltd.,* 196 Ohio App.3d 784, 2011-Ohio-4979, 965 N.E.2d 1007 (10th Dist.).

{¶ 15} In *Dyer,* Bishop International Engineering Company entered into a subcontract with the Thomas J. Dyer Company, an Ohio business, to provide plumbing services for a horse racetrack that Bishop Engineering was building for the Kentucky Jockey Club, Inc. After it completed the work and was not paid, Dyer brought an action against Bishop Engineering for payment. However, the club had declared bankruptcy, and Bishop Engineering asserted that according to the contract language, it had no obligation to make payments to Dyer to the extent that the club had not paid it. The contract stated:

"The total price to be paid to Subcontractor shall be $109 [sic] Dollars ($115,000.00) lawful money of the United States, no part of which shall be due until five (5) days after Owner shall have paid Contractor therefor * * *."

6

303 F.2d at 656.

{¶ 16} In examining this language, the Sixth Circuit Court of Appeals stated that the crucial issue was "whether [the contract language] is to be construed as a conditional promise to pay, *enforceable only when and if the condition precedent has taken place*." (Emphasis added.) *Id.* at 659. The court concluded that the contract language was insufficient as a matter of law to absolve Bishop Engineering of its duty to pay Dyer. Specifically, it held that the contract language did not "contain an express condition clearly showing that to be the intention of the parties." *Id.* at 661-662, citing Page, *The Law of Contracts*, Section 2100 (1919).

{¶ 17} In *Sloan,* the Shoemaker Construction Company contracted with Sloan & Company for Sloan to perform drywall and carpentry work on a waterfront condominium development in Philadelphia. At the completion of the project, the owner refused to pay Shoemaker, claiming that the work performed by some of the various subcontractors, including Sloan, was untimely and deficient. In turn, Shoemaker refused to pay Sloan the balance owing under their contract.

{¶ 18} The contract stated, " 'Final payment shall be made within thirty (30) days after the last of the following to occur, the occurrence of all of which shall be conditions precedent to such final payment * * *.' " 653 F.3d at 179. The Third Circuit Court of Appeals concluded that this language was a pay-if-paid provision, stating that the quoted language "states unequivocally that *[the owner's] payment to Shoemaker is a condition precedent to Shoemaker's obligation to pay Sloan*." (Emphasis added.) *Id*. at 181.

{¶ 19} Finally, in *Evans,* the Tenth District Court of Appeals was faced with a dispute between Triad Architects, Ltd., and Evans, Mechwart, Hambleton & Tilton, Inc. ("EMH & T"). Triad contracted with EMH&T to supply civil-engineering services for two residential development projects for which Triad was

to provide architectural and engineering plans. EMH & T completed all services under the two contracts and billed Triad. Triad refused to pay, because the owner had canceled both projects and refused to pay Triad.

{¶ 20} The contracts contained the following language:

> "§12.5 Payments to the Consultant shall be made promptly after the Architect is paid by the Owner under the Prime Agreement. The Architect shall exert reasonable and diligent efforts to collect prompt payment from the Owner. The Architect shall pay the Consultant in proportion to amounts received from the Owner which are attributable to the Consultant's services rendered.
>
> "* * *
>
> "§13.4.3 * * * The Consultant shall be paid for their services under this Agreement within ten (10) working days after receipt by the Architect from the Owner of payment for the services performed by the Consultant on behalf of their Part of the Project."

196 Ohio App.3d 784, 2011-Ohio-4979, 965 N.E.2d 1007, at ¶ 4.

{¶ 21} In concluding that the two clauses were not pay-if-paid payment clauses, the *Evans* court found:

> [T]he language of [the contract] is not explicit enough to indicate that the parties intended to create a condition precedent. *[The contract] does not expressly make payment from [the owner] a condition precedent to payment of [the subcontractor] * * *.*

(Emphasis added.) *Id.* at ¶ 20.

{¶ 22} Accordingly, these cases hold that a contract provision is pay-if-paid when payment by the owner is a condition precedent to payment of the subcontractor by the general contractor. A "condition precedent" is "a condition that must be performed before obligations in a contract become effective." *Coffman v. Ohio State Adult Parole Bd.*, 10th Dist. Franklin No. 12AP-267, 2013-Ohio-109, ¶ 11, citing *Atelier Dist., L.L.C. v. Parking Co. of Am., Inc.*, 10th Dist. Franklin No. 07AP-87, 2007-Ohio-7138, ¶ 35. " 'If the condition is not fulfilled, the parties are excused from performing.' " *Id.*, quoting *Atelier* at ¶ 35.

{¶ 23} As stated above, Section 4 states:

**RECEIPT OF PAYMENT BY CONTRACTOR FROM THE OWNER FOR WORK PERFORMED BY SUBCONTRACTOR IS A CONDITION PRECEDENT TO PAYMENT BY CONTRACTOR TO SUBCONTRACTOR FOR THAT WORK.**

(Capitalization and boldface sic.)

{¶ 24} The above language stating that receipt of payment by the contractor is a condition precedent to payment to the subcontractor requires that the owner first pay the contractor. The parties intended that the risk of the owner's nonpayment shift to the subcontractor rather than remain with the general contractor. To echo the Seventh Circuit Court of Appeals, "This provision means just what it says—that [the contractor's] duty to pay [the subcontractor] is expressly conditioned on its own receipt of payment—thus evincing the parties' unambiguous intent that each party assumes its own risk of loss if [the owner] becomes insolvent or otherwise defaults." *BMD Contrs., Inc. v. Fid. & Deposit*

*Co. of Maryland,* 679 F.3d 643, 650 (7th Cir.2012). Accordingly, A.E.M. and Transtar have agreed to a pay-if-paid clause.

{¶ 25} Finally, the use of the term "condition precedent" negates the need for additional language to demonstrate the intent to transfer the risk. It is true that the rule in *Dyer* requires that the parties' intent to transfer the risk of nonpayment be clear. 303 F.2d at 660-661. The use of the term "condition precedent" expresses that intent. The Seventh Circuit thoroughly discussed this reasoning in *BMD Contrs*:

> We do not disagree that to transfer the risk of upstream insolvency or default, the contracting parties must expressly demonstrate their intent to do so; that is the rule from *Dyer.* But by clearly stating that the contractor's receipt of payment from the owner is a condition precedent to the subcontractor's right to payment, the parties have expressly demonstrated *exactly* that intent. Adding specific assumption-of-risk language would reinforce that intent but is not strictly necessary to create an enforceable pay-if-paid clause. *Dyer* does not hold otherwise.
>
> * * *
>
> * * * Although it's possible to reinforce the clarity of a pay-if-paid clause by using redundant language—e.g., "in agreeing to this condition precedent, subcontractor assumes the risk of owner's insolvency"—additional language like this is not necessary if the meaning of the condition precedent is otherwise clear. *MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc.,* 436 F.3d 1257, 1263 (10th Cir.2006) (noting that a similarly worded subcontract's "failure to say all that it might have said is not enough to throw the intent of the contracting parties into doubt").

(Emphasis sic.) 679 F.3d at 650.

{¶ 26} Similarly, in finding the use of the term "condition precedent" sufficient to create a pay-if-paid contract provision, the *Sloan* court stated,

> We do not imagine that the parties intended [a pay-when-paid contract provision] merely because they did not use additional language to underscore their intent to create a pay-if-paid clause * * *. To mandate redundant provisions conjures the consequence that only repetition makes a provision pay-if-paid. Moreover, * * * courts should not interpret contracts in a way the "render[s] at least one clause superfluous or meaningless."

*Sloan,* 653 F.3d at 181, quoting *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 27 (2d Cir.1988).

## Conclusion

{¶ 27} Therefore, we hold that when a contract provides that payment by a project owner to a general contractor for work performed by the subcontractor is a condition precedent to payment by the general contractor to the subcontractor, the provision is a pay-if-paid provision. We further hold that the use of the term "condition precedent" in the payment provision of a contract between a general contractor and a subcontractor clearly and unequivocally shows the intent of those parties to transfer the risk of the project owner's nonpayment from the general contractor to the subcontractor.

{¶ 28} Section 4 of the contract between A.E.M. and Transtar is a pay-if-paid provision. The "condition precedent" language used in that section clearly and unequivocally shows that the parties intended to transfer the risk of the owner's nonpayment from A.E.M. to Transtar.

**{¶ 29}** We reverse the judgment of the Sixth District Court of Appeals holding that A.E.M. is not entitled to summary judgment as a matter of law and reinstate the judgment of the trial court.

Judgment reversed.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, and FRENCH, JJ., concur.

PFEIFER and O'NEILL, JJ., dissent.

_____

**O'NEILL, J., dissenting.**

**{¶ 30}** I disagree with the majority's holding. I think that Transtar Electric, Inc., deserves its day in court. I agree with the Sixth District Court of Appeals' conclusion that when a contract seeks to alter a fundamental custom between a general contractor and a subcontractor, such as shifting the risk of a project owner's nonpayment from the general contractor to the subcontractor, the intent to do so must be clear; that is, it must be stated in plain language that the subcontractor must look past the general contractor to the owner for payment. 2012-Ohio-5986, 983 N.E.2d 399 (6th Dist.); *see Thos. J. Dyer Co. v. Bishop Internatl. Eng. Co.,* 303 F.2d 655 (6th Cir.1962).

**{¶ 31}** This litigation is the result of Transtar's effort to recover payment for its work based on its contract with A.E.M. Electric Services Corporation, the general contractor. Even though it has completed all its work according to the contract, Transtar cannot bring an action against the project owner for breach of contract because no contract exists between Transtar and the owner, who now has the benefit of Transtar's work essentially for free. *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.,* 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701 (only parties to the contract may bring an action for breach of contract). Likewise, lack of privity also makes it difficult for Transtar to prevail in an action against the owner in quantum meruit or unjust enrichment.

**{¶ 32}** I agree that the use of the term "condition precedent" in the parties' contract supports A.E.M.'s argument. But employing the summary-judgment standard under Civ.R. 56(C), I am not convinced that the language used in this contract could lead reasonable minds to but one conclusion or that the language is sufficient on its face to shift the risk of the owner's nonpayment to the subcontractor.

**{¶ 33}** Absent from this contract is any indication that the subcontractor expressly assumed the risk of nonpayment by the owner. Neither does the contract include a statement or an acknowledgment that the contract price included the risk of the owner's nonpayment or a statement regarding what recourse is available to the subcontractor if the owner fails to pay *anyone* for the subcontractor's work. My view is that these ambiguities create genuine issues of material fact that make summary judgment inappropriate in this case. Taken to its logical conclusion, the majority decision implies that the contractor can take its profit from the venture, pull up stakes, and wish the subcontractor well as the subcontractor embarks on the task of wrestling with the owner over money owed on a contract to which the owner is not a party.

**{¶ 34}** I think the Sixth District got this case right in holding that summary judgment was improper. I would hold that the provision in the contract between Transtar and A.E.M. is not sufficient as a matter of law to demonstrate that these parties intended to shift the risk of the owner's nonpayment from the general contractor, A.E.M., to the subcontractor, Transtar. When a general contractor seeks to transfer the risk of the owner's nonpayment to the subcontractor as a matter of law, the contract must explicitly state that the parties intend to do so. To hold otherwise amounts to adopting a rule that allows property owners to arbitrarily refuse to pay subcontractors for work that is actually performed. That should not be the law of Ohio.

PFEIFER, J., concurs in the foregoing opinion.

_____

Luper Neidenthal & Logan, Luther L. Liggett Jr., and Heather Logan Melick, for appellee.

Spengler Nathanson, P.L.L., and James P. Silk Jr., for appellant.

Meyers, Roman, Friedberg & Lewis, R. Russell O'Rourke, and Debra J. Horn, for amici curiae, American Subcontractors Association, Inc., American Subcontractors Association of Ohio, Inc., and Ohio/Michigan National Electric Contractors Association.

_____