[Cite as *Battle Axe Constr., L.L.C. v. H. Hafner & Sons, Inc.*, 2019-Ohio-4191.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| BATTLE AXE CONSTRUCTION L.L.C., | : | APPEAL NO. C-180640 |
| Plaintiff-Appellee, | | TRIAL NO. 17CV-03439 |
| | : | *O P I N I O N.* |
| vs. | | |
| H. HAFNER & SONS, INC., | | |
| Defendant-Appellant. | : | |


Civil Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 11, 2019


*Yocum & Neuroth, L.L.C.,* and *Thomas R. Yocum*, for Plaintiff-Appellee,

*William Flax*, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1}    Defendant-appellant H. Hafner & Sons, Inc., ("Hafner") failed to fulfill its contractual obligation to furnish compactible soil to plaintiff-appellee Battle Axe Construction L.L.C. ("Battle Axe"), and then ignored repeated requests from Battle Axe to remedy the situation.  Hafner now appeals the trial court's award of $15,000 in damages to Battle Axe for breach of contract and breach of implied warranty for a particular purpose.

{¶2}    In two assignments of error, Hafner argues that the trial court erred in its statute-of-frauds analysis, and in failing to consider Battle Axe's conduct in frustrating Hafner's ability to perform and failure to mitigate damages.  Finding both assignments of error to be without merit, we affirm the judgment of the trial court.

### *Factual Background*

{¶3}    On April 18, 2016, Joseph Jackson, Battle Axe's CEO, called Justin Cooper, vice president of Hafner, about ordering compactible soil from Hafner. Battle Axe and Hafner had a three-year history of doing business together, and Battle Axe had ordered soil from Hafner before.  Jackson testified that "compactible soil" has a standard meaning in the construction industry—that it meets a minimum compaction percentage of 95 percent.  Jackson stated that when he called Cooper, Cooper told him that Hafner could supply compactible soil.  Per the parties' usual course of doing business, Jackson told Cooper over the phone what he needed, rather than providing him with any sort of specifications sheet.  The same day Jackson ordered the soil, he sent trucks to pick it up.

{¶4}   Over the course of the entire day, the trucks picked up 23 loads of soil from Hafner and took them to two separate construction projects.  Each time a truck took a load, Hafner charged Battle Axe's credit card.  Once Battle Axe offloaded and leveled the dirt at the project site, it was tested in multiple areas for compaction.  The tests failed at both project sites.

{¶5}   Upon discovering that the soil was unfit, Jackson called Cooper and informed him of the problem.  Cooper told Jackson that they would "come up with a solution," but then failed to respond to follow-up communications from Jackson. Jackson sent Cooper an email detailing the problem, and requesting that Hafner refund $3,200 for the soil and $2,880 for the trucking costs.  Cooper emailed Jackson back and told him that a proctor test had not yet been performed to determine if the soil was compactible.  Jackson testified that a proctor test is a method that can be used to determine the compaction of soil.  Jackson stated that the email was the first time Cooper mentioned anything about Hafner's need to test the soil.  Jackson emailed Cooper back, but did not receive any further responses from Cooper.

{¶6}   On April 20, Cooper would not answer the phone or any emails. Jackson did not have time to wait to figure out what to do with the unfit soil.  Rather than attempting to haul it back to Hafner, Jackson testified that the most efficient way to dispose of the soil was to transport it to a farm only 15 minutes from the project site.  Returning the soil to Hafner would have required Battle Axe's trucks to drive roughly an hour from the project site.  Therefore, Battle Axe began to offload the unfit soil at the farm.

{¶7}   Jackson stated that he would have waited to load his trucks if he knew Hafner needed to perform a proctor test on the soil prior to pick-up.  There was an

inspector (hired by the property owner) on site as they unloaded the soil at the project site, but absent obvious contamination, compaction problems cannot be determined by simple observation of the soil. Jackson testified that the soil must be a certain height before it can be tested with a proctor. The soil wasn't tested until Battle Axe spread the soil out and "lifted" it, which was a day or two after the soil was offloaded.

{¶8}    Cooper testified that he never represented to Jackson that the soil was compactible. Cooper stated that he told Jackson in their initial phone call that the soil would require a proctor test before Battle Axe could pick it up. He stated that after his phone call with Jackson, he directed that soil samples be sent to Terracon, an engineering company, for testing to determine if the soil was compactible. Cooper was notified by Jackson that the soil was not compactible before Terracon could perform the tests.

{¶9}    Cooper testified that the transaction tickets, which the truck drivers signed for each of the 23 loads, merely described the soil as "fill soil." However, when Battle Axe's trucks showed up to pick up the soil, Hafner did not contact anyone at Battle Axe to tell them the test had not yet been performed, nor did it stop the trucks from loading and hauling the soil away.

{¶10} Hafner advances three main arguments with regard to the first assignment of error: (1) the transaction was actually 23 different sales, none of which were over $500, and so the statute of frauds does not apply, and even if the statute of frauds did apply, the email communications referenced as satisfying the statute of frauds were sent three days after the sales were completed, and so do not satisfy the statute of frauds; (2) there was no meeting of the minds so as to create an implied warranty of fitness for a particular purpose; and (3) Hafner was prevented

4

from satisfying its obligations under the duty of implied warranty due to Battle Axe's actions in removing the soil and transporting it away.

### *Standard of Review*

{¶11} When reviewing a trial court's judgment to determine if it is against the manifest weight of the evidence, an appellate court

> weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed.

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20.

{¶12} Under a manifest-weight-of-the-evidence review, "every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Id.* at ¶ 21. "If the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." *Karches v. City of Cincinnati,* 38 Ohio St.3d 12, 19, 526 N.E.2d 1350 (1988).

### *Contract Formation*

{¶13} In order for a contract to exist, there must be a meeting of the minds as to the essential terms of the contract. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16.

{¶14} Hafner claims that there was no meeting of the minds as to what the parties meant when they contracted for compactible soil. It argues that Jackson understood the soil as already compactible and ready for pick-up, while Cooper

meant that Hafner would perform a proctor test to determine *if* the soil was compactible. Hafner argues that this disconnect means the trial court erred when it found the existence of a contract and an implied warranty of fitness for a particular purpose.

{¶15} The court was presented with conflicting testimony, and did not err in relying on Jackson's testimony, the phone calls, and the emails in finding that there was a meeting of the minds, and thus, a contract formed. The evidence showed that Cooper told Jackson that Hafner could provide compactible soil. Therefore, he must be held to his promise to perform.

### Statute of Frauds

{¶16} R.C. 1302.04(A) bars the enforcement of contracts for the sale of goods over $500 unless there is a writing indicating a contract between the parties and signed by the party against whom enforcement is sought.

{¶17} The trial court found that the emails exchanged between Hafner and Battle Axe on April 21, 2016, were sufficient to satisfy the statute of frauds. The finding is supported by the record. The emails show an agreement between Battle Axe and Hafner in which Battle Axe agreed to pay Hafner $3,200 for engineered soil.

{¶18} Even if the emails were not sufficient, the statute of frauds is satisfied as a matter of law by payment and acceptance. R.C. 1302.04(C)(3) provides that even when a contract fails to satisfy the writing requirement of the statute of frauds, it is still enforceable where the goods have been accepted and paid for. *See Royal Doors, Inc. v. Hamilton-Parker Co.,* 10th Dist. Franklin No. 92AP-938, 1993 WL 141233, *6 (Apr. 29, 1993); s*ee also Frank Adams & Co. v. Baker*, 1 Ohio App.3d 137, 138, 439 N.E.2d 953 (1st Dist.1981).

{¶19} It is undisputed that Battle Axe accepted the soil and paid Hafner. Therefore, the statute of frauds is satisfied by payment and acceptance, and the contract is enforceable.

{¶20} The trial court's holding that the statue of frauds was satisfied by the writings was not against the manifest weight of the evidence. Also, the statute of frauds was satisfied by the acceptance of the soil by Battle Axe and payment to Hafner.

### *Implied Warranty of Fitness for a Particular Purpose*

{¶21} The elements of an implied warranty of fitness for a particular purpose are (1) the seller knows of the buyer's particular purpose, (2) the seller knows that the buyer is relying on the seller's skill or judgment to furnish suitable goods, and (3) the buyer actually relies on the seller's skill or judgment. R.C. 1302.28; *Hollingsworth v. The Software House, Inc.,* 32 Ohio App.3d 61, 65, 513 N.E.2d 1372 (2d Dist.1986). As Official Comment One to R.C. 1302.28 notes,

> whether or not this warranty arises in any individual case is basically a question of fact to be determined by the circumstances of the contracting. Under this section the buyer need not bring home to the seller actual knowledge of the particular purpose for which the goods are intended or of his reliance on the seller's skill and judgment, if the circumstances are such that the seller has reason to realize the purpose intended or that the reliance exists.

{¶22} The trial court found that there was an implied warranty of fitness for a particular purpose because the elements of R.C. 1302.28 were met. The trial court found that (1) Cooper knew Jackson requested and purchased compactible soil, (2) Cooper knew Jackson was relying on his skill and judgment to provide the requested

compactible soil, and (3) Jackson relied on Cooper's skill and judgment when he purchased the soil.

{¶23} Battle Axe was not required to tell Hafner exactly what functions the soil was being used for, rather the circumstances of the sale indicate that Battle Axe was relying on Hafner's expertise to provide it with compactible soil.

{¶24} Hafner claims that even if there was an implied warranty of fitness for a particular purpose, Battle Axe's actions in removing the truckloads of soil before any testing could be done made it impossible for Hafner to satisfy its obligations to deliver the soil "fit" for its particular purpose. Hafner appears to confuse an implied warranty of fitness for a particular purpose with a condition precedent. Its argument that it was Battle Axe's actions which prevented it from fulfilling its obligations under the contract might be persuasive if the proctor test was a condition precedent to the formation of a contract. But, that is not the case.

{¶25} A condition precedent must occur before obligations in a contract become effective. *Transtar Elec., Inc. v. A.E.M. Elec. Servs. Corp.,* 140 Ohio St.3d 193, 2014-Ohio-3095, 16 N.E.3d 645, ¶ 22. If the condition is not fulfilled, the parties are excused from performance. *Id.* Whether a provision of a contract is a condition precedent is a question of the parties' intent, which is determined by the language of the provision, the language of the entire agreement, and the subject matter of the contract. *M3 Producing, Inc. v. Tuggle,* 2017-Ohio-9123, 91 N.E.3d 805, ¶ 14 (5th Dist.).

{¶26} Cooper testified that during his initial phone conversation with Jackson, they agreed on what was essentially a condition precedent—that the soil be tested for compaction prior to either party performing. He also testified that he sent the soil to Terracon to be tested, but cancelled the test once Battle Axe discovered the

8

problem. Jackson testified that Cooper told him the soil was compactible. Then, when Battle Axe's trucks picked up the soil, no one from Hafner told them the soil still needed to be tested.

{¶27} The trial court was presented with conflicting testimony, and chose to believe Battle Axe's witnesses and evidence, which showed that Jackson requested compactible soil, Cooper knew Jackson was relying on his knowledge and judgment to provide the requested compactible soil, and Jackson actually relied on Cooper's knowledge and judgment when he purchased the soil. Its decision is supported by evidence of prior dealings between the parties, Jackson's testimony, Cooper's testimony that Hafner released the soil to the trucks despite claiming to have sent the soil off to be tested, and the emails between Jackson and Cooper.

{¶28} Hafner's argument also fails under an impossibility-of-performance theory. Impossibility of performance is a defense to a claim for breach of contract, but the act which renders performance impossible must be unforeseeable. *Lehigh Gas-Ohio, L.L.C. v. Cincy Oil Queen City, L.L.C.,* 2016-Ohio-4611, 66 N.E.3d 1226, ¶ 16 (1st Dist.). Hafner could have prevented or halted pick-up of the soil at any time, but it did not do so. Battle Axe's removal of the soil was not only foreseeable by Hafner, it was authorized by Hafner. Hafner's first assignment of error is overruled.

### *Mitigation*

{¶29} In Hafner's second assignment of error, it advances two arguments. First, it once again raises Battle Axe's conduct as an excuse for its own nonperformance. As discussed above, Battle Axe's conduct did not frustrate Hafner's ability to perform. Second, Hafner argues that Battle Axe failed to properly mitigate damages.

{¶30} The injured party in a breach-of-contract action cannot recover damages that it could have prevented by "reasonable affirmative action." *First Fin. Bank, N.A. v. Cooper*, 2016-Ohio-3523, 67 N.E.3d 140, ¶ 23 (1st Dist.). The injured party need only use "reasonable, practical care and diligence, not extraordinary measures." *Id.* Whether a party uses reasonable care to avoid damages is a question of fact. *Id.*

{¶31} Battle Axe took reasonable steps to mitigate its damages. Upon discovering that the soil was unfit on April 18, Jackson called Cooper and told him that there was a problem with the soil. Cooper told Jackson that they would "come up with a solution." When Jackson tried to follow up with Cooper, he did not receive any response. So, he emailed Cooper. Cooper initially responded, but again failed to respond to follow-up communications.

{¶32} On April 20, Battle Axe began to transport the unfit soil to a farm near the project site and offload it there. Jackson stated that this was the most efficient way to dispose of the unfit soil because the farm was only 15 minutes from the job site, whereas Hafner was roughly an hour from the job site. Although Battle Axe was not paid by the farm for the soil, Battle Axe purchased "good" soil from the farm to use on its projects, and then left the "bad" soil at the farm. Jackson testified that Hafner could not have resold the soil to someone else because it was "bad dirt," and would not achieve compaction.

{¶33} Hafner claims that Battle Axe did not mitigate damages according to "standard procedures," but fails to articulate what those standard procedures are. Battle Axe's decision to mitigate damages by hauling the soil to the farm was reasonable, and the trial court's award of damages was not against the manifest weight of the evidence.

### *Conclusion*

**{¶34}** The trial court did not err in finding a contract between Hafner and Battle Axe and an implied warranty of fitness for a particular purpose for Hafner to deliver compactible soil to Battle Axe. Battle Axe's conduct did not frustrate Hafner's ability to perform under the contract. Battle Axe used reasonable care in transporting the unfit soil to a local farm in order to mitigate its damages. Therefore, Hafner's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

**ZAYAS, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.