WORLD METALS, INC., Appellee,

v.

AGA GAS, INC., Appellant.

[Cite as *World Metals, Inc. v. AGA Gas, Inc.* (2001), 142 Ohio App.3d 283.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 19711.

Decided April 18, 2001.

284

*Mark W. Bernlohr,* for appellee.

*Kenneth A. Zirm* and *Vincent L. Cheverine,* for appellant.

CARR, Judge.

Appellant, AGA Gas, Inc. ("AGA"), has appealed from a judgment of the Summit County Court of Common Pleas that awarded appellee, World Metals, Inc. ("World Metals"), $969,172 in consequential damages for breach of an implied warranty of fitness for particular purpose.[1] This court reverses and remands the case for a new trial.

I

World Metals began business as a producer of tool steel in 1990. Its business soon became profitable and, in the mid–1990s, World Metals decided to enter the stainless steel market. As its controller explained, the new branch of the business was essentially viewed as a new company and was even given a different name, Advanced Master Alloys. The startup costs for this new line of business were substantial because the production of stainless steel required a completely different process from the production of tool steel. World Metals eventually spent over $900,000 to modify its plant and purchase an argon oxygen decarburi-

---

1. The trial court's judgment also awarded damages to AGA on its counterclaim, but that aspect of the judgment is not at issue in this appeal. Although World Metals filed a cross-appeal, it later dismissed it voluntarily.

zation ("AOD") converter and related equipment and over $500,000 to pay qualified personnel to set up and run this new branch of its business. Because World Metals would be entering the stainless market for the first time, it spent thousands of additional dollars introducing its new division to that market.

On October 27, 1995, World Metals executed a written agreement with AGA for an AOD gas flow control system that would be used by World Metals in its production of stainless steel and alloys. The agreement provided for a purchase price of $95,000, payable in a down payment of $15,000, with the remaining balance to be paid over six months. The agreement further provided that the payment schedule was "based on equipment performance meeting operating specifications[.]"

The agreement included an express disclaimer of warranties, including a provision that the remedy for breach of any warranty would be limited to repair or replacement of the equipment and that AGA would not be liable for consequential damages. A handwritten notation on the agreement, however, indicated that the agreement was "IN ACCORDANCE W/ P.O. # 9716," which provided for a state-of-the-art, computerized AOD control system, with manual control capability, as represented by AGA.

World Metals was apparently never satisfied with the equipment and, consequently, it stopped making payments under the agreement after it had paid less than one-third of the purchase price. World Metals' efforts to resolve the problems with AGA were unsuccessful. It eventually decided to minimize its losses and ceased production of stainless steel.

On December 24, 1997, World Metals filed a complaint against AGA, alleging, among other things, that through its incorporation of the purchase order, the sales agreement expressly and implicitly warranted the equipment, that AGA had breached those warranties, that AGA had failed to correct the problems despite repeated demands by World Metals, and that World Metals had sustained damages in excess of $2,700,000 as a result. As was later revealed at trial, the damages sought by World Metals included lost profits and apparently the total costs of starting up and running the new stainless steel branch of its business. AGA counterclaimed on several causes of action, including breach of contract and unjust enrichment, seeking to recover the balance of the purchase price for the flow control system and other amounts that World Metals allegedly owed for other goods and services it received from AGA.

The case proceeded to a jury trial on the claim and the counterclaim. The jury entered a general verdict for World Metals on its claim. In response to special interrogatories, the jury indicated that the agreement was predominantly one for the sale of goods and that AGA breached no express warranties but that it did breach the implied warranty of fitness for a particular purpose. Although the

jury found that World Metals had failed to prove any lost profits as a result of the breach, it found that World Metals had sustained other consequential damages in the amount of $969,172. The jury also found for AGA on its counterclaim, on a theory of unjust enrichment, in the amount of $83,352. AGA appeals and raises six assignments of error.

## II

### ASSIGNMENT OF ERROR V

"The trial court erred in entering judgment on the jury's verdict awarding consequential damages to appellee where appellee did not establish its damages were proximately caused by Appellant's breach."

■ This court will address AGA's fifth assignment of error first because it is dispositive. AGA contends that, even if the jury properly found that it breached an implied warranty of fitness for particular purpose,[2] the evidence did not establish that World Metals sustained $969,172 in consequential damages as a result of the alleged breach. This court agrees.

■ R.C. 1302.88(C) provides that consequential damages may be awarded for breach of warranty "[i]n a proper case." Consequential damages, by their very definition, must "resul[t] from the seller's breach." R.C. 1302.89(B). In other words, consequential damages must be a proximate result of the breach. Consequential damages, as with any other contract damages, are awarded to place the aggrieved party in the same position it would have been in had the contract not been breached. See *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.* (1983), 6 Ohio St.3d 436, 439, 6 OBR 480, 482–483, 453 N.E.2d 683, 686–687.

World Metals presented evidence that it sustained the following costs, which it labeled as "consequential damages":

| | |
|---|---|
| AOD purchases—hard costs | $ 911,184 |
| Line of Credit and Equipment Loan Interest | 413,161 |
| Management/Setup Hours | 328,636 |
| AMA Direct Labor | 121,940 |
| John Bornes—personnel costs | 69,769 |
| AOD Labor Costs | 59,132 |
| Rent Expense | 52,725 |
| Office Supplies/Setup—hard costs | 22,274 |

---

**2.** This court assumes, for purposes of this discussion only, that the jury properly found that AGA breached the implied warranty of fitness for particular purpose. Because this court reverses and remands for a new trial, it need not address the propriety of the jury's determination of liability.

| | |
|---|---:|
| Carpec—marketing | 19,871 |
| John Bornes—personnel taxes and benefits | 17,638 |
| Employee Relocating Expense | 13,300 |
| San Francisco Trade Show | 12,585 |
| Image Producers—marketing | 5,067 |
| Investment Casting Institute—dues and fees | 4,000 |
| Ken H. Relocating Expense | 2,750 |
| | 2,054,032 [3] |

As briefly explained at trial by the president and the controller of World Metals, these damage figures represented essentially all of the costs that World Metals incurred in setting up and running its new stainless steel division, called Advanced Master Alloys. As the controller of World Metals testified, "It was a completely different name, different company, different concept." World Metals needed to remodel its plant, purchase new equipment, hire new personnel, and market the new division to the stainless steel market. From the beginning, World Metals tracked all costs associated with the new division separate from its tool steel division, even if that cost was one that World Metals was already incurring. For example, the rent expense listed above was not for a new facility but actually represented space in World Metals' existing building that it used for the new division.

In addition to the all-inclusive nature of these costs, many of them were incurred prior to any breach by AGA. Most of the setup costs and the AOD hard costs, which included costs to remodel the existing World Metals building and to purchase equipment, were incurred before the AGA flow control system was even installed. In other words, World Metals was seeking to recover as "consequential damages" the general overhead of its stainless steel division. This court has been unable to find any authority for awarding general business overhead as a separate component of damages. These costs were not caused by the breach because they would have been incurred regardless of it. See *Tarter v. Monark Boat Co.* (E.D.Mo.1977), 430 F.Supp. 1290, 1295. In fact, the president of World Metals admitted that the company would have incurred many of these costs even if it had purchased its flow control system from another company.

■ "When an entire business is wrongfully interrupted and injured," as World Metals alleged here, "the measure of damages is the decrease in volume traceable to the wrong, as reflected by loss of profits, expenses incurred or similar concrete evidences of injury." *Guntert v. Stockton* (1976), 55 Cal.App.3d 131, 143, 126 Cal.Rptr. 690, 697.

---

**3.** World Metals also presented evidence of lost profits, but the jury indicated in its special interrogatories that no lost profits were awarded. It is impossible to determine from the special interrogatories, however, which of these itemized costs were included in the jury's award.

■ Although general business overhead may be recoverable as a component of lost profits, see *Digital & Analog Design Corp. v. N. Supply Co.* (1989), 44 Ohio St.3d 36, 41, 540 N.E.2d 1358, 1363, that is not how World Metals recovered these damages. Instead, World Metals presented evidence of its overhead costs separate from its lost profit evidence and was able to circumvent the requirements for establishing lost profits of a new business. See *AGF, Inc. v. Great Lakes Heat Treating Co.* (1990), 51 Ohio St.3d 177, 555 N.E.2d 634, paragraphs two and three of the syllabus. Consequently, by merely establishing that it made such expenditures, World Metals was able to recoup nearly half of its total overhead expenditures for its stainless steel division without offering any evidence that it would have been able to recover these expenditures but for AGA's breach.

In *Great Am. Music Machine v. Mid–South Record Pressing Co.* (M.D.Tenn. 1975), 393 F.Supp. 877, the plaintiff sought recovery of some of its overhead expenses as an alternative to seeking lost profits, apparently because it would have been "impossible to project with reasonable certainty what the future profits of the new corporation might have been." *Id.* at 883. Although the plaintiff "proved the amount of its investment and the cost of operating its business during the period in question, it offered no convincing proof that * * * it would in all probability have [had sufficient sales] to recoup its investment." *Id.* at 884. The federal district court rejected the plaintiff's claim for such damages because "to grant plaintiff its entire investment in the [new business] as damages for the breach by defendant would in all probability be to put [the plaintiff] in a far better financial position than it would have been had there been no breach." *Id.* at 885.

■ Outside of the lost-profit setting, while a plaintiff may not recover its total overhead as consequential damages flowing from a breach, it may recover the additional overhead that it incurred due to the breach. Although the court in *Great Am. Music Machine* did not allow the recovery of general overhead, it did allow the plaintiff to recover overhead costs that were reasonably incurred in efforts to rehabilitate the damage to its business caused by the breach because those costs were directly attributable to the breach. A party injured by a breach of contract is entitled to recover indirect costs, such as overhead, when it incurs such costs "as a result of the breach." *S & D Mechanical Contrs., Inc. v. Enting Water Conditioning Sys., Inc.* (1991), 71 Ohio App.3d 228, 239, 593 N.E.2d 354, 361–362 (finding that the plaintiff was entitled to recovery of costs of "divert[ing] its own time and resources from other projects to correct the deficiencies created by [the defendant's] breach"); *Complete Gen. Constr. Co. v. Ohio Dept. of Transp.* (May 25, 2000), Franklin App. No. 98AP–1619, unreported, 2000 WL 674899, appeal not allowed (2000), 90 Ohio St.3d 1442, 736 N.E.2d 904 (holding

that unabsorbed office overhead incurred during defendant's delay was recoverable because plaintiff was not able to get replacement work); *T.R.C. Industries, Inc. v. Indus. Capital Mach., Inc.* (Nov. 24, 1982), Summit App. No. 10478, unreported, 1982 WL 2863 (concluding that increased production costs due to defendant's delay in delivering and then repairing its equipment would not have been incurred but for the breach).

Although World Metals did present evidence that it experienced production slowdowns and delays due to the alleged problems with the AOD flow control system, it failed to attribute any of its consequential damage figures to those delays. The lump-sum overhead figures given by World Metals gave the jury no reasonable basis on which it could calculate the consequential damages flowing from AGA's breach. See *Kinetico, Inc. v. Indep. Ohio Nail Co.* (1984), 19 Ohio App.3d 26, 32, 19 OBR 92, 97–99, 482 N.E.2d 1345, 1351–1352 (explaining that evidence of increased office costs flowing from defendant's breach must directly attribute each cost to the breach).

■■ Because the jury had no reasonably certain basis upon which it could award consequential damages caused by AGA's breach, this court must remand the case for a new trial. See *Kinetico, supra,* at 32–33, 19 OBR at 97–99, 482 N.E.2d at 1351–1353 (Jackson, P.J., concurring). Although this court has the discretion to remand for a new trial solely on the issue of damages if it deems a limited retrial to be appropriate, see *State ex rel. Smith v. O'Connor* (1995), 71 Ohio St.3d 660, 662–663, 646 N.E.2d 1115, 1117–1118, it is difficult to separate the damage and liability issues in this case. The alleged breach by AGA involved conduct that occurred over a lengthy period of time and it is impossible to determine from the jury's answers to the special interrogatories what acts or omissions by AGA constituted the breach or when the breach occurred. Because the issue of damages and their proximate cause are necessarily intertwined with what constituted the breach and when it occurred, this court remands the case for a new trial on damages and liability on the claims of World Metals. Consequently, the remaining assignments of error have been rendered moot by this court's disposition of AGA's fifth assignment of error and need not be addressed. See App.R. 12(A)(1)(c).

### III

AGA's fifth assignment of error is sustained, the judgment of the trial court on the claims of World Metals is reversed, and the cause is remanded for a new trial. The remaining assignments of error have been rendered moot and will not be addressed.

*Judgment reversed in part*
*and cause remanded.*

WHITMORE, J., concurs.

BATCHELDER, P.J., dissents.

BATCHELDER, Presiding Judge, dissenting.

I respectfully dissent. I would overrule AGA's fifth assignment of error because I do not believe that this is one of those rare cases that justifies disturbing a jury verdict. The assessment of damages lies within the province of the jury and this court should not substitute its judgment for that of the jury. See *Carter v. Simpson* (1984), 16 Ohio App.3d 420, 423, 16 OBR 490, 493–494, 476 N.E.2d 705, 708–709, citing *Toledo, Columbus & Ohio River RR. Co. v. Miller* (1923), 108 Ohio St. 388, 140 N.E. 617. AGA has failed to demonstrate that the jury lost its way or created a manifest miscarriage of justice in this case. See *id.*

The jury was free to accept or reject any of the damage evidence presented by World Metals. The jury evidently rejected most of the damage evidence for it awarded only one-fourth of the total damages sought by World Metals. It is apparent from the jury's ultimate award and its answers to special interrogatories that the jury thoroughly considered the damage issue. I would not disturb that determination.