[Cite as *WSB Rehab. Servs. Inc. v. Cent. Accounting Sys. Inc.*, 2022-Ohio-2160.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| WSB REHABILITATION SERVICES., INC., | : | APPEAL NOS. C-210454 |
| | | C-210467 |
| Plaintiff-Appellee/Cross-Appellant, | : | TRIAL NO. A-1901246 |
| | : | |
| vs. | : | *O P I N I O N.* |
| | : | |
| CENTRAL ACCOUNTING SYSTEMS, INC., | : | |
| | : | |
| Defendant/Cross-Appellee, | : | |
| | : | |
| and | : | |
| | : | |
| C. MICAH RAND, INC., d.b.a BROOKWOOD RETIREMENT COMMUNITY, | : | |
| | : | |
| RAND LOVELAND LLC, d.b.a. LOVELAND HEALTHCARE NURSING AND REAHAB CENTER | : | |
| | : | |
| EVAN GRAY, LLC, d.b.a. FLORENCE PARK NURSING & REHAB CENTER | : | |
| | : | |
| MICAH CLOVERNOOK, LLC, d.b.a. CLOVERNOOK HEALTH CARE PAVILION | : | |
| | : | |
| and | : | |
| | : | |
| CRYSTALWOOD, INC., d.b.a. THE ALOIS ALZHEIMER CENTER | : | |
| | : | |
| Defendants-Appellants/Cross-Appellees. | : | |

Civil Appeals From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Case
                              Remanded.

Date of Judgment Entry on Appeal: June 24, 2022

*Fultz Maddox Dickens PLC* and *Daniel E. Hancock* for Plaintiff-Appellee/Cross-Appellant,

*Rolf Goffman Martin Lang LLP*, *Christopher G. Kuhn* and *Joseph F. Petros III*, for Defendant/Cross-Appellee and Defendants-Appellants/Cross-Appellees.

**BOCK, Judge.**

**{¶1}** Defendants-appellants C. Micah Rand, Inc., d.b.a Brookwood Retirement Community ("Brookwood"), Rand Loveland, LLC, d.b.a. Loveland Health Care Nursing & Rehab Center ("Loveland"), Evan Gray, LLC, d.b.a. Florence Park Nursing & Rehab Center ("Florence Park"), Micah Clovernook, LLC, d.b.a. Clovernook Health Care Pavilion ("Clovernook"), and Crystalwood, Inc., d.b.a. The Alois Alzheimer Center ("Alois") (collectively, "the nursing facilities"), along with defendant/cross-appellee Central Accounting Systems, d.b.a. Health Care Management Group ("HCMG"), (HCMG and the nursing facilities collectively are called "the facilities defendants") appeal the trial court's entry of summary judgment in favor of plaintiff-appellee WSB Rehabilitation Services, Inc., d.b.a. Blue Sky Therapy Management ("Blue Sky") on its breach-of-contract claim.

**{¶2}** Blue Sky cross-appeals, arguing that the trial court erred in (1) granting the facilities defendants' summary-judgment motion on their indemnification claim, (2) awarding improper damages on the facilities defendants' indemnification claim, and (3) denying its tortious-interference claim.

### Relevant Facts and Procedural History

**{¶3}** In 2011, the nursing facilities entered into separate, but materially similar, agreements entitled "Agreement for Physical, Occupational, and Speech Therapy Services" ("agreements"), whereby Blue Sky provided therapy services to residents at each of the nursing facilities' locations. The nursing facilities are managed by HCMG. HCMG requested that Blue Sky also provide therapy services to Alois, which is also managed by HCMG. As each facility had its respective agreement with

3

Blue Sky, Alois and Blue Sky agreed that they would operate according to the terms of Blue Sky's agreement with Clovernook.

{¶4} Under "Schedule A" of the agreements, to receive payment, Blue Sky was to submit a monthly invoice that "shall" include the name of the therapist and the time spent providing services ("invoice requirement") within six months of the service date. Although Blue Sky's invoices from 2011 until July 2018 did not contain the invoice requirement, the facilities defendants paid the invoices. Moreover, early in the relationship, the parties implemented a direct data link between their medical record systems that instantly transferred data involving the services, such as the therapists' names and the time the therapists spent providing services.

{¶5} The agreements contained an "anti-waiver" clause: "The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be a waiver of any subsequent breach of the same or other provision hereof."

{¶6} In 2017, the government began investigating Blue Sky's provision of therapy services, the agreements between the nursing facilities and Blue Sky, the nursing facilities' operations, and the nursing facilities' submission of claims to federal payment programs. Blue Sky later learned that the investigation resulted from a qui tam complaint filed by a former Blue Sky employee.

{¶7} In August 2018, HCMG advised the nursing facilities that it was "on hold with payments" to Blue Sky. No further invoices were paid, but the facilities defendants continued to enter Blue Sky's invoices in their accounts-payable journals and reported the invoices as paid on their 2018 tax and Medicare forms.

4

{¶8} In January 2019, the nursing facilities contributed to a $500,000 "adequate assurance" payment to Blue Sky for future services after Blue Sky informed the nursing facilities that it was terminating the agreements. Blue Sky continued to provide therapy services until the facilities defendants terminated the agreements in February 2019. Blue Sky informed the facilities defendants that they owed $2,292,188.36 in unpaid invoices.

{¶9} The qui tam action—which was settled in December 2019 without any finding of liability—prompted the facilities defendants to demand that Blue Sky indemnify them for their costs incurred in responding to the government's investigation. Blue Sky refused to pay the indemnification, contending that the facilities defendants' failure to pay the outstanding invoices constituted a prior material breach of the agreements.

{¶10} Blue Sky sued the facilities defendants, asserting claims for (1) breach of contract, two counts of unjust enrichment, promissory estoppel, and account against Brookwood, Loveland, Florence Park, and Clovernook; (2) tortious interference against HCMG; and (3) a declaratory judgment that the facilities defendants' first material breach negated Blue Sky's duty to indemnify them.

{¶11} The facilities defendants filed counterclaims for indemnification under section 12(B) of the agreement, which provided that Blue Sky would hold the facilities defendants harmless for any costs, losses, etc. "arising out of or in any manner directly or indirectly related to Therapist's Services * * * except to the extent attributable to the gross negligence or willful conduct of [the facilities defendants]," and breach of a purported "pre-payment agreement" between the parties.

{¶12} Following discovery, the parties moved for summary judgment.

5

A. <u>Summary-judgment motions</u>

{¶13} Blue Sky's summary-judgment motion argued that it had performed all of its obligations under the agreements, and that the facilities defendants had access to the invoice information via the direct data link between the parties' medical record systems. Blue Sky contended that it had continued providing services through 2018 into 2019 because the facilities defendants made the assurance payment, but the facilities defendants refused to pay the previous unpaid invoices. Blue Sky argued that this breach of contract invalidated the facilities defendants' indemnification claim under the doctrine of first material breach.

{¶14} Blue Sky further asserted that the facilities defendants had impliedly or expressly waived the agreements' condition precedent that required Blue Sky to provide certain information in its invoices. It argued that, although the facilities defendants purposefully withheld the fact that they would no longer pay Blue Sky's invoices unless they contained the invoice requirement, the facilities defendants continued to enter Blue Sky's invoices in their accounts-payable journals and reported the invoices as paid on their 2018 tax and Medicare forms.

{¶15} Blue Sky further argued that HCMG had improperly interfered with the nursing facilities' performance under the agreements by advising them not to pay Blue Sky's invoices going forward, which was a violation of Medicare laws and invalidated HCMG's entitlement to indemnification.

{¶16} The facilities defendants filed a combined summary-judgment motion on their claims and response in opposition to Blue Sky's summary-judgment motion. They argued that Blue Sky could not sue to reap the benefits of the parties' agreements while also seeking to be absolved of its indemnification obligations under the same

agreements. They further asserted that it was undisputed that their expenses in defending the qui tam claim and the government investigation arose out of Blue Sky's services and obligations under the agreements, and were not attributable to the facilities defendants' gross negligence or willful misconduct. They contended that Blue Sky's breach-of-contract claim against them did not excuse Blue Sky from its obligation to indemnify them.

{¶17} The facilities defendants argued that they were not required to pay Blue Sky because it failed to perform conditions precedent which had not been waived or modified. They contended that there was no genuine issue of material fact that Blue Sky did not provide invoices according to the invoice requirement, Blue Sky continued to fail to provide appropriate invoices after receiving the adequate assurance payment, and that the agreements' anti-waiver clauses applied. The facilities defendants further asserted that the nursing facilities' tax returns and Medicare cost reports were not relevant to whether Blue Sky was entitled to payments.

{¶18} HCMG argued that Blue Sky could not maintain a tortious-interference claim against it as such a claim does not lie against an agent acting within the course and scope of its duties as the nursing facilities' manager, the facilities defendants did not violate Medicare law by failing to pay Blue Sky, and the tortious-interference claim is not viable under the Restatement of the Law of Torts.

### B. The trial court's judgment

{¶19} The court concluded that the facilities defendants had waived the invoice condition precedent and that the anti-waiver clause did not apply to a failure to meet a condition precedent.

7

{¶20} Further, the trial court held the facilities defendants were entitled to indemnification for costs they had incurred defending the qui tam suit. The court did not address the dispute between the parties as to the amount of damages that the facilities defendants sought.

{¶21} Finally, the court entered a clarification order denying Blue Sky's motion for summary judgment on its tortious-interference claim as HCMG was acting "in its capacity as manager of the Facility Defendants" when it caused them not to pay Blue Sky's invoices, and therefore, was not liable for tortious interference.

## Law and Analysis

{¶22} We conduct a de novo review of summary-judgment decisions. *Holloman v. Permanent Gen. Assur. Corp.*, 1st Dist. Hamilton No. C-180692, 2019-Ohio-5077, ¶ 8. Under Civ.R. 56(C), summary judgment is proper when the moving party establishes that "(1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *Id*. at ¶7, quoting *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9.

### A. The facilities defendants' assignment of error

{¶23} In their sole assignment of error, the facilities defendants argue that the trial court erred in denying their motion for summary judgment and granting Blue Sky's motion for summary judgment on its breach-of-contract claim.

1. Breach of contract

**{¶24}** To prove a breach-of-contract claim, a party must show "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." (Citations omitted.) *White v. Pitman*, 2020-Ohio-3957, 156 N.E.3d 1026, ¶ 37 (1st Dist.).

**{¶25}** It is undisputed that the facilities defendants stopped paying Blue Sky's invoices, which gave rise to an uncontested amount of damages. Further, the record establishes that the facilities defendants purposefully withheld from Blue Sky that they were not paying the invoices because of its failure to adhere to the invoice requirement. Thus, whether the facilities defendants breached the agreements rests on whether Blue Sky's nonperformance of the invoice requirement excused the facilities defendants' obligation to pay Blue Sky and whether Blue Sky's non-performance triggered the anti-waiver clause.

2. The invoice requirement was waived

**{¶26}** The parties do not dispute that the invoice requirement was a condition precedent. A condition precedent is an act or event that must occur before performance obligations arise. *Gilman v. Physna, LLC*, 1st Dist. Hamilton No. C-200457, 2021-Ohio-3575, ¶ 19; *see Transtar Elec., Inc. v. A.E.M. Elec. Servs. Corp.*, 140 Ohio St.3d 193, 2014-Ohio-3095, 16 N.E.3d 645, ¶ 22. An unsatisfied condition precedent can excuse performance under a contract and is a defense to a breach-of-contract claim. *Id.; see Great Water Capital Partners, LLC v. Down-Lite Internatl., Inc.*, 1st Dist. Hamilton Nos. C-150015 and C-150023, 2015-Ohio-4877, ¶ 16.

**{¶27}** But a party may waive a condition precedent by performing under the contract despite the nonfulfillment of the condition. *Corey v. Big Run Indus. Park,*

9

*LLC*, 10th Dist. Franklin No. 09AP-176, 2009-Ohio-5129, ¶ 19. A condition precedent "may be waived by the party to whom the benefit of the condition runs * * * expressly or by implication, and the key to its application in a particular case is a showing of some performance pursuant to the terms of the contract." *Id.* at ¶ 18, quoting *Mangan v. Prima Constr., Inc.*, 1st Dist. Hamilton No. C-860234, 1987 Ohio App. LEXIS 6375 (Apr. 9, 1987).

{¶28} A waiver is an intentional relinquishment of a known right, which may be made by express words or by conduct. *Father & Son Property Maintenance, LLC v. Maxim Ents., Inc.,* 5th Dist. Stark No. 2010 CA 00116, 2011-Ohio-689, ¶ 21. To establish a waiver, the party alleging it "must prove a clear, unequivocal, decisive act of the party against whom the waiver is asserted which amounts to an estoppel on his part." *Id.*, quoting *Cornett v. Fryman*, 12th Dist. Warren No. CA91-04-031, 1992 Ohio App. LEXIS 248, *6 (Jan. 27, 1992).

{¶29} In *Father & Son Property Maintenance*, the parties had orally agreed that Maxim would pay Father & Son for completing jobs only after Maxim received payment from the bank. *Id.* at ¶ 5. But Maxim paid for work performed on late orders without first receiving payment from the bank. *Id.* at ¶ 23. The court found that Maxim had performed its part under the contract for at least the first month of the parties' agreement, and therefore was estopped from asserting conditions precedent. *Id.*; *see Erectors, Inc., v. Dellagnese Constr. Co.*, 9th Dist. Summit No. 12461, 1986 Ohio App. LEXIS 7903, *6 (Aug. 13, 1986) (waiver found where defendants paid 95 percent of the amount due to plaintiffs before plaintiffs filed their action).

{¶30} We find that the facilities defendants waived the invoice requirement by paying Blue Sky's invoices for seven years, despite those invoices not containing the

name of the therapist and the time spent providing therapy. Moreover, we note that Blue Sky provided the information that the facilities defendants assert was missing from the invoices via the direct data link between the parties' medical record systems. The facilities defendants did not seek replication of that information on Blue Sky's invoices for seven years. Accordingly, they waived the condition precedent.

### 3. The anti-waiver clause was never triggered

**{¶31}** The facilities defendants assert that despite not enforcing the invoice requirement for seven years, the anti-waiver clause allowed them to begin enforcing the invoice requirement and relieved them of the duty to pay Blue Sky for non-performance of the invoice requirement.

**{¶32}** Generally, anti-waiver provisions allow a party to waive a right in one instance without relinquishing rights to enforce other contract provisions. *See Snowville Subdivision Joint Venture Phase I v. Home S&L of Youngstown*, 8th Dist. Cuyahoga No. 96675, 2012-Ohio-1342, ¶ 16.

**{¶33}** The anti-waiver clause provides: "[t]he waiver by either party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be a waiver of any subsequent breach of the same or other provision thereof."

**{¶34}** If a contractual provision is a promise, a party's failure to perform constitutes a breach of contract. *Corey*, 10th Dist. Franklin No. 09AAp-176, 2009-Ohio-5129, at ¶ 20. A party's failure to fulfill a condition precedent, however, is a merely a fact or event—it is not a promise that can be breached. *Morrison v. Bare*, 9th Dist. Summit No. 23667, 2007-Ohio-6788, ¶ 17.

**{¶35}** The invoice requirement was a condition precedent, not a promise. Nonperformance of a condition precedent is not a breach of the contract. "A failure to satisfy a condition precedent excuses performance under a contract, or, alternatively put, renders a contract unenforceable, but does not affect the validity of the contract." *Baumgardner v. Bimbo Food Bakeries Distrib., Inc.* 697 F. Supp.2d 801, 808 (N.D.Ohio 2010).

**{¶36}** We hold that Blue Sky's failure to perform the invoice requirement—a condition precedent—did not constitute a breach or violation of the agreements. The anti-waiver clause was limited to breaches or violations of the agreements. Because Blue Sky did not breach or violate the agreements, the anti-waiver clause was never triggered. The facilities defendants were obligated to continue paying Blue Sky for services it provided.

**{¶37}** There are no genuine issues as to any material fact on any element of Blue Sky's breach-of-contract claim. Therefore, we find that the facilities defendants breached the contract by failing to pay the invoices. The facilities defendants' sole assignment of error is overruled.

B. Blue Sky's Assignments of Error

1. The Facilities Defendants were entitled to indemnification

**{¶38}** In its first assignment of error, Blue Sky asserts that the trial court erroneously granted the facilities defendants' motion for summary judgment on their indemnification claim. Blue Sky asserts that the facilities defendants are not entitled to indemnification because the facilities defendants breached the agreements before their right to indemnity had vested.

**{¶39}** Indemnification "is a right of a person who has been compelled to pay what another should pay in full to require complete reimbursement." *Travelers Indem. Co. v. Trowbridge*, 41 Ohio St.2d 11, 14, 321 N.E.2d 787 (1975).

**{¶40}** The indemnification clause required Blue Sky to indemnify the facilities defendants against any "damages, losses, liabilities, costs, expenses, including reasonable attorney's fees and fines from any governmental agency * * * arising out of or in any manner directly or indirectly related to the Therapist's Services."

**{¶41}** The indemnification clause is broadly worded and encompasses any damages that the facilities defendants incurred as a result of Blue Sky's services under the agreements. The facilities defendants' losses related to the qui tam lawsuit began before they breached the agreements. Accordingly, we hold that liability under the indemnification clause arose when the facilities defendants began to incur liability, such as expenses and attorney's fees, related to the qui tam lawsuit and the government investigation. To hold otherwise would allow Blue Sky to reap the benefit of payment without fulfilling its own obligations under the agreements. Blue Sky's first assignment of error is overruled.

### 2. Determinations of Amount Owed for Indemnification

**{¶42}** Blue Sky's second assignment of error argues that determinations as to the amount that is owed under an indemnification claim must be made on undisputed material facts during the summary-judgment phase. An indemnification clause for legal fees is generally enforceable, but a trial court retains the discretion to determine if an attorney fee is warranted. *Am. Premier Underwriters v. Marathon Ashland Pipeline*, 3d Dist. Mercer No. 10-03-12, 2004-Ohio-2222, ¶ 28. The nature of an indemnity relationship is determined by the intent of the parties as expressed by the

13

contractual language. *Id*. at ¶ 29. Where contract terms are unambiguous, a court will not create a new obligation by finding an intent that was not expressed in the clear language used by the parties. *Id*.

**{¶43}** Part of the facility defendants' indemnification claim included its employees' salaries. We find that it is improper to include these employees' salaries in the damages award. There was no evidence that the facilities defendants had to hire other employees to perform these employees' regular job duties. And with or without the investigation and qui tam lawsuit, the facilities defendants would have paid these employees' salaries.

**{¶44}** Moreover, "[t]he party seeking an award of attorney fees bears the burden of establishing the reasonableness of the requested fees." *Metron Nutraceuticals, L.L.C. v. Thomas*, 8th Dist. Cuyahoga No. 110280, 2022-Ohio-79, ¶ 36. Where there is a dispute of fact as to damages, there should be a trial. *See World Metals Inc. v. AGA Gas, Inc.*, 142 Ohio App.3d 283, 755 N.E.2d 434 (9th Dist.).

**{¶45}** Blue Sky disputed the reasonableness of the facility defendants' claimed damages. Blue Sky engaged an attorney with experience in False Claims Act cases to refute the facilities defendants' assertion that their attorney's fees were reasonable. The expert also opined that the charges paid for e-discovery services, medical record review, and document review were unreasonable.

**{¶46}** Thus, the trial court erred by granting summary judgment on the amount of damages. Blue Sky's second assignment of error is sustained.

### 3. Tortious Interference with a Contract

14

**{¶47}** Blue Sky's third assignment of error asserts that it was entitled to summary judgment on its tortious-interference-with-contractual-relations claim. Ohio law recognizes both the tort of intentional interference with a contract and the tort of intentional interference with a prospective contractual relationship. *West v. Visteon Corp.*, 367 F. Supp.2d 1160, 1163 (N.D.Ohio 2005).

**{¶48}** In *West*, the court found that there is no cause of action for an employee's claim that her supervisor tortiously interfered with her employment "when the act complained of is within the scope of the [supervisory employee's] duties." *Id.* at *9.

**{¶49}** Similarly, a party cannot sue an agent for allegedly interfering with a relationship between the party and the agent's principal. *Pannozzo v. Anthem Blue Cross and Blue Shield*, 152 Ohio App.3d 235, 2003-Ohio-1601, 787 N.E.2d 91, ¶ 19 (7th Dist.); *see Bodnovich v. ABF Freight Syst., Inc.*, 7th Dist. Belmont No. 93B36, 1994 Ohio App. LEXIS 5598 (Dec. 13, 1994) (agents or employees cannot be sued for alleged interference with relationship with principal or employer).

**{¶50}** Blue Sky cannot recover on a tortious-interference claim because HCMG and the nursing facilities have an agent/principal relationship. Blue Sky's third assignment of error is overruled.

## Conclusion

**{¶51}** For the foregoing reasons, we affirm the trial court's judgment in favor of Blue Sky's breach-of-contract claim and the facilities defendants' indemnification claim. We further affirm the trial court's judgment against Blue Sky's tortious-interference claim. We reverse the trial court's judgment as to the amount of damages

awarded for the facilities defendants' indemnification claim and we remand this case to the trial court to conduct a trial as to the amount of damages.

Judgment affirmed in part, reversed in part, and case remanded.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.