[Cite as *Eagle Realty Invests., Inc. v. Dumon*, 2022-Ohio-4106.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| EAGLE REALTY INVESTMENTS, INC., | : | APPEAL NOS.  C-220087 |
| | | C-220109 |
| FRONTAGE LODGING INVESTOR HOLDINGS, INC., | : | C-220111 |
| | | TRIAL NO. A-1901099 |
| and | : | |
| VAIL HOTEL HOLDINGS ESHV, LLC, | : | *O P I N I O N.* |
| Plaintiffs-Appellees, | | |
| vs. | : | |
| PETER G. DUMON, | : | |
| GRAHAM L. HERSHMAN, | : | |
| JULIE A. DUMON, | | |
| MICHAEL S. PAYNE, | : | |
| HELMUT A. HORN, | : | |
| and | : | |
| JULIE A. DUMON, as Trustee of the Julie A. Dumon Trust Dated March 24, 2006, | : | |
| Defendants-Appellants. | : | |

Civil Appeals From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Case Remanded

Date of Judgment Entry on Appeal: November 18, 2022

*Vorys, Sater, Seymour, & Peas LLP, Emily E. St. Cyr, David F. Hine* and *Eric W. Richardson,* for Plaintiffs-Appellees,

*Lindhorst & Dreidame Co., LPA, Bradley McPeek* and *Michael F. Lyon,* for Defendants-Appellants Peter Dumon and Julie Dumon, Individually and As Trustee of the Julie A. Dumon Trust Dated March 24, 2006,

*Hahn Loesner & Parks, LLP, Daniel A. DeMarco, Christopher B. Wick* and *Andrew Y. Schiefer*, for Defendants-Appellants Graham Hershman, Michael Payne, and Helmut Horn.



**Bock, Judge.**

**{¶1}** Defendants-appellants Peter Dumon and Julie Dumon, individually and in her capacity as a trustee of the Julie A. Dumon Trust (collectively "Dumons"), and defendants-appellants Graham Hershman, Michael Payne, and Helmut Horn (collectively "Non-Dumons") challenge the trial court's judgment in favor of plaintiffs-appellees Eagle Realty Investments, Inc., ("Eagle") Frontage Lodging Investor Holdings, LLC, ("Frontage") and Vail Hotel Holdings ESHC, LLC, ("Vail Hotel Holdings") (collectively "Beneficiaries"). For the following reasons, we affirm the trial court's judgment in part, but reverse the trial court's award of attorney fees and remand the case for further proceedings.

## I. Facts and Procedure

**{¶2}** This appeal is the product of a failed attempt to develop a luxury hotel in Vail, Colorado. While the Dumons and Non-Dumons were experienced developers and managers in the hospitality industry, they lacked funding. Eagle and Frontage had capital. So, the Dumons and Non-Dumons entered a joint venture with Eagle and Frontage to form Vail Hotel Holdings. The parties signed an "Operating Agreement" to memorialize the joint-venture agreement, which identified Peter Dumon's LLC as the managing member of the project. This dispute centers on another agreement—a "Guaranty of Completion, Budgets Cash Flow and Other Matters" ("Guaranty"), which was created to induce the Beneficiaries to sign the "Operating Agreement."

**{¶3}** The Guaranty's introductory recital provides that Vail Hotel Holdings "shall enter into a Construction Contract with Haselden Construction, LLC, a Colorado limited liability company (the "***Contractor***"), which Construction Contract shall be a 'costs plus' contract subject to a guaranteed maximum price" ("Haselden Recital").

3

**{¶4}** Relevant here, in Section 2.1 of the Guaranty the Dumons and Non-Dumons "unconditionally and absolutely guarantee[d]" certain obligations:

(a) except as may be excused by an event of Force Majeure, Completion of the Project on or before the date that is twenty (20) months following the Construction Loan Closing ("***Completion Date***") in accordance with the requirements of the Plans and Specs, the Operating Agreement, and the Construction Loan documents and in compliance with any and all applicable laws and requirements of all government authorities having jurisdiction over the project, free and clear of all liens, claims, encumbrances and rights of others (other than liens created by the Construction Loan documents and real estate taxes not yet due and payable);

(b) the timely payment of all costs of Completion * * * for an amount equal to or less than Thirty-Three Million, Nine Hundred Ninety-Seven Thousand Six Hundred Ninety-four Dollars ($33,997,694) (without using any of the funds of the Company to pay the amount, if any, by which the total of such costs exceeds the Guaranteed Maximum Price);

* * *

(h) the payment on demand of all Enforcement Costs (as hereinafter defined).

"***Enforcement Costs***" mean all costs incurred by Beneficiaries under Section 6 as well as reasonable attorneys' and paralegals' fees, including the cost of inside attorneys and paralegals, costs and expenses and all court costs and costs of appeal actually incurred by Beneficiaries in

4

collecting any amount due Beneficiaries under this Guaranty or in prosecuting any action against Guarantors with respect to all or any part of the Guaranty Obligations.

{¶5} In 2016, the Dumons and Non-Dumons signed a "Reaffirmation of Guaranty" ("Reaffirmation") to "reaffirm their respective obligations under the Guaranty" to induce Eagle and Frontage to explore potential transactions related to their interests in Vail Hotel Holdings. Specifically, the Dumons and Non-Dumons "acknowledge[d] and agree[d] that all of the terms, conditions, waivers, consents, and covenants in the Guaranty remain unaltered and in full force and effect, and that the Guaranty is a legal, valid and binding obligation."

{¶6} But the development stalled and in 2019 the Beneficiaries sued the Dumons and Non-Dumons, alleging a breach of the Guaranty and requesting damages and attorney fees. Following two hearings, the trial court granted the Beneficiaries' summary-judgment motion and awarded $9,905,199.77 in damages, plus prejudgment interest and attorney fees. The trial court determined that the Guaranty was valid, enforceable, and unambiguous, and that the Dumons and Non-Dumons breached the agreement by failing to perform their obligations under the Guaranty. In addition, the trial court found the request for attorney fees reasonable. Relevant here, the trial court denied as moot the Non-Dumons' motion to amend their answer to include the nonoccurrence of a condition precedent as a defense. Furthermore, the trial court denied the Dumons' motion to strike an affidavit submitted to the court by the Beneficiaries in support of their request for attorney fees.

{¶7} The Dumons and Non-Dumons filed appeals, which we consolidated.

5

## II. <u>Law and Analysis</u>

**{¶8}** The Dumons challenge the trial court's judgment in two assignments of error. For their part, the Non-Dumons raise three assignments of error. For clarity and ease of analysis, we consider some arguments together. We review the trial court's grant of summary judgment de novo. *Wsb Rehab. Servs. v. Cent. Accounting Sys.,* 1st Dist. Hamilton Nos. C-210454 and C-210467, 2022-Ohio-2160, ¶ 22. Summary judgment is proper if there are no issues of material fact, and, construing the evidence most strongly in favor of the nonmoving party, the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

<u>The Guaranty</u>

**{¶9}** The trial court's entry of summary judgment in favor of the Beneficiaries was proper if 1.) a valid contract existed, 2.) the Dumons and Non-Dumons failed to perform when performance was due, and 3.) the Beneficiaries suffered damages or losses as a result. *Gilman v. Physna*, LLC, 1st Dist. Hamilton No. C-200457, 2021-Ohio-3575, ¶ 17, citing *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 41. "Where the facts are undisputed and the only question to be resolved is whether a breach of contract occurred, a question of law exists for the court to decide." *Stephan Business Ents. v. Lamar Outdoor Advertising Co.*, 1st Dist. Hamilton No. C-070373, 2008-Ohio-954, ¶ 16.

1. *Conditions Precedent*

**{¶10}** In their first assignment of error, the Dumons raise an issue of contract interpretation, arguing that the nonoccurrence of an alleged condition precedent excused their obligations under the Guaranty. The Non-Dumons argue the same in

their first assignment of error. We review the meaning of a contract de novo. *Groen v. Children's Hosp. Med. Ctr.*, 2012-Ohio-2815, 972 N.E.2d 648, ¶ 19 (1st Dist.).

**{¶11}** The Dumons and Non-Dumons maintain that the plain and unambiguous language of the Haselden Recital, which provided that Vail Hotel Holdings "shall enter into a Construction Contract with Haselden Construction, LLC, a Colorado limited liability company," constituted a condition precedent. In a contract, a condition precedent "is an act or event that must occur before performance obligations arise." *Gilman* at ¶ 19, citing *Transtar Elec., Inc. v. A.E.M. Elec. Servs. Corp.,* 140 Ohio St.3d 193, 2014-Ohio-3095, 16 N.E.3d 645, ¶ 22. The nonoccurrence of a condition precedent "excuses performance under the contract and is a defense to a breach-of-contract claim." *Id.* The parties agree that a construction contract with Haselden never materialized. The Dumons and Non-Dumons contend that their obligations under the Guaranty were never triggered because Haselden was never involved in the project.

**{¶12}** In contract law, conditions precedent are disfavored and "will not be found unless the agreement plainly shows an intent to the contrary." *City of Westlake v. VWS, Inc.,* 8th Dist. Cuyahoga No. 100180, 2014-Ohio-1833, ¶ 24, quoting *Campbell v. George J. Igel & Co.,* 2013-Ohio-3584, 3 N.E.3d 219 ¶ 13 (4th Dist.). Any interpretation of the Haselden Recital must "give effect to the intent of the parties." *Transtar* at ¶ 9. To determine the parties' intent, we consider " 'the language of a particular provision, the language of an entire agreement, or the subject matter of an agreement.' " *Campbell* at ¶ 13, quoting *Adkins v. Bratcher*, 4th Dist. Washington No. 07CA55, 2009-Ohio-42, ¶ 32, quoting *Hiatt v. Giles*, 2d Dist. Darke No. 1662, 2005-Ohio-6536, ¶ 23. As always, we are instructed to avoid any interpretation of a contract

that would render terms or provisions superfluous or meaningless. *See Bates v. Bates*, 7th Dist. Noble No. 21 No. 0482, 2022-Ohio-1055, ¶ 38, citing *Fifth Third Mtge. Co. v. Rankin*, 4th Dist. Pickaway No. 10CA45, 2011-Ohio-2757, ¶ 24, citing *Capital City Community Urban Redev. Corp. v. City of Columbus*, 10th Dist. Franklin No. 08AP-769, 2009-Ohio-6835, ¶ 30.

{¶13} As evidence of the parties' intent, the Dumons contend that the "Operating Agreement" incorporated an estimate from Haselden and, the Dumons argue, the project could not move forward without Haselden as the contractor. Indeed, the Guaranty incorporated the "Operating Agreement's" definitions to define any capitalized, but undefined, words in the Guaranty. The Dumons point to the first obligation listed, which guaranteed the "Completion of the Project" within 20 months of the closing of the "Construction Loan." Relevant here, the "Operating Agreement" defined "Completion" as the point in time when Vail Hotel Holdings received "final waivers and releases of liens from the Contractor," and "Contractor" is defined as Haselden. To this end, the Dumons argue that the execution of a construction contract with Haselden was necessary to trigger their obligations under the Guaranty.

{¶14} But interpreting the Haselden Recital as a condition precedent would render other provisions of the Guaranty meaningless. *See Bates* at ¶ 38. Provisions of a contract should not be read in a vacuum; rather, "we must construe the contract as a whole." *Wall v. Kroger Co.*, 1st Dist. Hamilton No. C-140355, 2015-Ohio-734, ¶ 13. Consider Section 2.1, which delineates obligations of the Dumons and Non-Dumons. In that provision of the Guaranty, the Dumons and Non Dumons "unconditionally and absolutely guarantee" their obligations. When we construe the Guaranty as a whole,

the Guaranty makes clear that the obligations were not contingent upon the execution of a construction contract with Haselden.

{¶15} The Beneficiaries argue that the Dumons and Non-Dumons waived their rights to assert the failure of a condition precedent. We agree because guarantors cannot assert defenses that they have waived. *O'Brien v. Ravenswood Apts., Ltd.*, 169 Ohio App.3d 233, 2006-Ohio-5264, 862 N.E.2d 549, ¶ 29 (1st Dist.); *see Kraft Elec. Contr., Inc. v. Lori A. Daniels Irrevocable Trust,* 2019-Ohio-2029, 136 N.E.3d 951, ¶ 24 (1st Dist.). A condition precedent may be waived " 'expressly or by implication.' " *Corey v. Big Run Indus. Park, LLC,* 10th Dist. Franklin No. 09AP-176, 2009-Ohio-5129, ¶ 18, quoting *Mangan v. Prima Constr., Inc.*, 1st Dist. Hamilton No. C-860234, 1987 Ohio App. LEXIS 6375 (Apr. 8, 1987). A party may waive a contractual right through a voluntary or intentional " 'act inconsistent with claiming it.' " *Baughman v. State Farm Mut. Auto. Ins. Co.,* 160 Ohio App.3d 642, 2005-Ohio-1948, 828 N.E.2d 211, ¶ 9 (9th Dist.), quoting *Marfield v. Cincinnati, D&T Traction Co.,* 111 Ohio St. 139, 144, 144 N.E. 689 (1924).

{¶16} The actions of the parties demonstrate that contracting with Haselden was not necessary to trigger the Guaranty's obligations. As this court has explained, "[C]ommunications between the parties after the agreement's execution often constitute valuable evidence as to how both parties understood and implemented the agreement." *Kraft* at ¶ 16. The Dumons acknowledged in their brief that six months after the Guaranty was signed, Peter Dumon, as the managing member of Vail Hotel Holdings, and the Beneficiaries agreed to consider substitute contractors. The evidence in the record indicates that Eagle informed Peter Dumon that the project needed to move forward with Haselden or another contractor. Indeed, Eagle told Peter

Dumon, "we must select one of the two contractors and move forward with construction."

{¶17} Then in 2016, the Dumons and Non-Dumons signed the Reaffirmation and agreed "that all of the terms, conditions, waivers, consents, and covenants in the Guaranty remain unaltered and in full force and effect, and that the Guaranty is a legal, valid and binding obligation of such." The Reaffirmation provided that the Dumons and Non-Dumons had "no defenses or set offs against any Beneficiary, its officers, directors, employees, agents or attorneys, with respect to the Guaranty."

{¶18} At a minimum, these acts demonstrate an understanding by the parties that the Guaranty obligations were unqualified and unconditional. While the Non-Dumons argue that Peter Dumons' actions were impermissibly considered by the trial court as parol evidence, this court recently rejected a similar argument in *Kraft* as a "misunderstanding of the parol evidence rule, which endeavors to preserve the integrity of written agreements by prohibiting modification with evidence of prior or contemporaneous writings." *Kraft,* 2019-Ohio-2029, 136 N.E.3d 951, at ¶ 16.

{¶19} For these reasons, we hold that the language of the Guaranty and subsequent acts of the parties show that a Haselden contract was not a condition precedent to the Guaranty obligations. Moreover, the Dumons and Non-Dumons waived the non-occurrence of a condition precedent as a defense to their obligations in the Guaranty. We overrule the Non-Dumons' first assignment of error.

2. *Breach of the Guaranty*

{¶20} In their second assignment of error, the Non-Dumons challenge the trial court's award of damages to the Beneficiaries for their equity contributions and argue that the damages exceeded the scope of the Guaranty. Likewise, the Dumons argue

that the Beneficiaries failed to connect the equity contributions to the obligations listed in the Guaranty. Specifically, both the Dumons and Non-Dumons assert that the Beneficiaries' equity contributions were not listed in Section 2.1 of the Guaranty, which identified the obligations of the Dumons and Non-Dumons. The trial court ruled that "Plaintiffs performed their obligations under contract; that Defendants did not perform their obligations under contract and breached the same; that Plaintiffs have suffered compensatory damages as a result of Defendants' breaches."

{¶21} In response, the Beneficiaries argue that the equity payments were discussed in the Guaranty. We agree. The Guaranty's recitals stated that Eagle and Frontage agreed "to make certain equity contributions to the Company." Section 2.2 provided that "[a]mounts distributed or repaid to and re-contributed or re-advanced by Beneficiaries will be guaranteed to the same extent as original obligations." The Guaranty was signed "to induce Eagle and [Frontage] to agree to make the [equity] [c]ontributions." The Beneficiaries contributed "$10,534,848.93 in equity payments" from October 2014 to February 2015. At the February hearing, the trial court ruled that the equity contributions were recoverable as compensatory damages.

{¶22} Still more, the trial court's award of compensatory damages was proper. Compensatory damages awarded for a breach of contract are limited to actual loss for the purpose of placing " 'the injured party in as good a position as it would have been but for the breach.' " *Evans Landscaping, Inc. v. Grubb*, 1st Dist. Hamilton No. C-090139, 2009-Ohio-6645, ¶ 12, quoting *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 144, 684 N.E.2d 1261 (9th Dist.1996). The damages awarded "must correspond to injuries resulting from the breach." *Textron* at 144. The party in breach of the contract "must pay damages equivalent to the total harm suffered, even

if factors other than the breach contributed to causing that harm." *Claris, Ltd. v. Hotel Dev. Servs., LLC,* 2018-Ohio-2602, 104 N.E.3d 1076, ¶ 40 (10th Dist.), citing 2 Perillo, *Corbin on Contracts*, Section 55.9, at 31 (Rev.Ed.2005). As the Beneficiaries point out, damages awarded for a breach of contract are proper if the damages are the "natural or probable consequences of the breach." *Thompson Thrift Constr. v. Lynn*, 5th Dist. Delaware No. 15 CAE 10 004, 2016-Ohio-1530, ¶ 100.

**{¶23}** The record is clear that the Beneficiaries contributed $10,534,848.93 as of February 2015. Approximately $8,400,000 was allocated to purchase the land for the project. Under the Guaranty, the Dumons and Non-Dumons were obligated to "complete" the project within a 20-month period following the closing of the construction loan. While the Guaranty required the project to be completed "free and clear of all liens, claims, encumbrances, and rights of others," several mechanics liens were filed against the project. Ultimately, they failed to complete the project. The damages were the natural and probable consequences of the breach. The trial court's award of compensatory damages was proper, and we overrule the Non-Dumons' second assignment of error.

3. *Prejudgment Interest*

**{¶24}** Finally, the Dumons maintain that the trial court erroneously awarded prejudgment interest without making a factual determination as to when the prejudgment interest began to accrue and without identifying an interest rate.

**{¶25}** Prejudgment interest "acts as compensation and serves ultimately to make the aggrieved party whole." *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110, 117, 652 N.E.2d 687 (1995). When a trial court awards damages for a breach of contract, R.C. 1343.03(A) provides that "the creditor is entitled to interest at

the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money." Under R.C. 1343.03(A), a party granted judgment on a breach-of-contract claim "is entitled to prejudgment interest as a matter of law." *Ronald J. Solomon, D.D.S., Inc. v. Davisson*, 2018-Ohio-2011, 113 N.E.3d 1003, ¶ 7 (1st Dist.). Yet, a trial court must determine "when the debt became due and payable and calculate the amount of interest due." *Thompson Farms, Inc. v. Estate of Thompson*, 7th Dist. Columbiana No. 20 CO 0014, 2021-Ohio-2364, ¶ 100, quoting *Landis v. Grange Mut. Ins. Co.*, 82 Ohio St.3d 339, 342, 695 N.E.2d 1140 (1998). Determining the date when the debt became due is a factual determination made by the court. *Solomon* at ¶ 8.

{¶26} The trial court ordered the Dumons and Non-Dumons to pay "$9,905,199.77, plus costs, pre-judgment interest running from May 24, 2018." The Dumons maintain that the record fails to support the trial court's choice of accrual date for prejudgment interest. But a review of the record makes clear that Eagle and Frontage sent a demand letter requesting $11,293,909.55, dated May 16, 2018, to the Dumons and Non-Dumons. The letter imposed a May 23 deadline to consent to the payments. The trial court's finding that prejudgment interest began accruing on May 24, 2018, corresponds with the deadline and was therefore proper.

{¶27} Turning to the appropriate interest rate, R.C. 1343.03(A) and 5703.47 establish a default statutory rate for prejudgment interest. *Dix Rd. Property Mgt. LLC v. Thomas*, 12th Dist. Butler No. CA2019-07-126, 2019-Ohio-5366, ¶ 10. Under R.C. 5703.47, "the statutory interest rate for judgment is calculated annually based on the federal short-term interest rate, rounded to the nearest whole number, plus three percent." Yet, the statutory interest rate does not apply where the parties have a

written contract that "provide[s] a rate of interest with respect to money that becomes due and payable." *Solomon* at ¶ 5, quoting *Hobart Bros. Co. v. Welding Supply Serv., Inc.*, 21 Ohio App.3d 142, 144, 486 N.E.2d 1229 (10th Dist.1985).

{¶28} The Guaranty does not provide an interest rate. Therefore, the trial court had no reason to deviate from the statutory rate under R.C. 1343.03(A) and 5703.47. In short, the trial court's compensatory-damages award arising out of the Beneficiaries' equity payments was within the scope of the Guaranty. The trial court's determination that prejudgment interest began accruing on May 24, 2018, was supported by the record and the default statutory rate established by R.C. 1343.03 and 5703.47 applies. Therefore, we overrule the Dumons' first assignment of error.

<u>Attorney Fees</u>

{¶29} The Dumons' second assignment of error challenges the trial court's award of attorney fees. Specifically, they maintain that the trial court abused its discretion when it denied their motion to strike the affidavit of Eric W. Richardson, a partner at Vorys, Sater, Seymour and Pease, LLP, which the Beneficiaries attached to their motion for summary judgment in support of their request for attorney fees. The trial court found that "Plaintiffs' attorney's fees are reasonable" and awarded the Beneficiaries "reasonable costs and attorneys' fees incurred in collecting this judgment." We review an award of attorney fees for an abuse of discretion. *Kitchens v. Ruff,* 2022-Ohio-1378, 188 N.E.3d 684, ¶ 11 (1st Dist.).

{¶30} As a general rule, attorney fees are not recoverable in contract actions. *Wright v. Fleming,* 1st Dist. Hamilton No. C-070121, 2008-Ohio-1435, ¶ 5, quoting *Keal v. Day*, 164 Ohio App.3d 21, 2005-Ohio-5551, 840 N.E.2d 1139, ¶ 5 (1st Dist.). But a prevailing party may recover attorney fees under a specific provision in a

contract. *Kitchens* at ¶ 12. The Guaranty required the Dumons and Non-Dumons to cover "enforcement costs," which included

> reasonable attorneys' fees and paralegals' fees, including the cost of inside attorneys and paralegals, costs expenses and all court costs of appeal actually incurred by Beneficiaries in collecting any amount due Beneficiaries under this Guaranty or in prosecuting any action against Guarantors with respect to all or any part of the Guaranty Obligations.

**{¶31}** A party requesting attorney fees must show that the requested fees are reasonable. *Wsb Rehab. Servs.,* 1st Dist. Hamilton Nos. C-210454 and C-210467, 2022-Ohio-2160, at ¶ 44, quoting *Metron Nutraceuticals, L.L.C. v. Thomas*, 8th Dist. Cuyahoga No. 110280, 2022-Ohio-79, ¶ 36. Determining " ' "what is reasonable" ' " presents a question of fact. *Mann v. Mendez*, 9th Dist. Lorain No. 04CA008562, 2005-Ohio-3114, ¶ 22, quoting *Kimball v. Austin*, 9th Dist. Lorain No. 01CA007760, 2001 Ohio App. LEXIS 3384, *3-4, (Aug. 1, 2001), quoting *Madden v. Madden*, 2d Dist. Montgomery No. 15576, 1996 Ohio App. LEXIS 2557, *11 (June 14, 1996).

**{¶32}** In support of the request for attorney fees, the Richardson affidavit provided, based on his personal knowledge, that four Vorys attorneys worked 1,414.7 total hours as of February 28, 2021, resulting in $471,259.50 billed for attorney fees. Richardson stated that the billing practices, fees, and costs were reasonable and fair. Under Civ.R. 56(E), supporting affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." When an affidavit references a document, "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached." Civ.R. 56(E). Here, the

Richardson affidavit referenced the billing records to establish the total amount of attorney fees incurred by the Beneficiaries related to this lawsuit.

{¶33} A trial court "may permit affidavits to be supplemented" by further affidavits under Civ.R. 56(E). Following a hearing in which the trial court granted summary judgment in favor of the Beneficiaries, the Beneficiaries filed a "Notice of Supplementation," which requested an additional $297,118.50 for 929.80 hours of work by Vorys attorneys beginning on March 1, 2021. The Beneficiaries attached a second Richardson affidavit and attached a "Statement of Services and Disbursements" from Vorys, which identified the attorneys who worked on the Beneficiaries' case, the description of the work they performed, the date, and the hours the work was performed. Therefore, we hold that the affidavits attached to the attorney-fee requests satisfied Civ.R. 56(E), and the trial court's decision to deny the Dumons' motion to strike the Richardson affidavit was proper.

{¶34} But when attorney fees are disputed as unreasonable, "there should be a trial." *Wsb Rehab. Servs.,* 1st Dist. Hamilton Nos. C-210454 and C-210467, 2022-Ohio-2160, at ¶ 44, citing *World Metals Inc. v. AGA Gas, Inc.*, 142 Ohio App.3d 283, 755 N.E.2d 434 (9th Dist.2001). The Dumons filed a motion to sever the Beneficiaries' request for attorney fees and argued for a separate hearing to determine the reasonableness of the Beneficiaries' claimed fees. The Dumons disputed the reasonableness of the claimed attorney fees. At the December hearing, the Dumons repeated their request to sever the attorney-fee issue and hold a hearing on the attorney-fee issue after the breach-of-contract claim was decided. The Dumons asserted that a hearing was necessary to "talk about whether certain fees were reasonable or not" and that the issue "shouldn't be handled through an affidavit."

16

**{¶35}** Because the attorney fees were disputed in this case, the trial court should have held a hearing on that issue. Some factors to consider when determining whether attorney fees are reasonable include "(1) time and labor, novelty of issues raised, and necessary skill to pursue the course of action; (2) customary fees in the locality for similar legal services; (3) result obtained; and (4) experience, reputation and ability of counsel." *Benton Village Condominium Owners Assn. v. Bridge*, 8th Dist. Cuyahoga No. 106892, 2018-Ohio-4896, ¶ 29, citing *Bolek v. Miller-McNeal,* 8th Dist. Cuyahoga No. 103320, 2016-Ohio-1383, citing *Pyle v. Pyle,* 11 Ohio App.3d 31, 35, 463 N.E.2d 98 (8th Dist.1983).

**{¶36}** Consequently, we hold that the trial court abused its discretion when it granted the Beneficiaries' request for attorney fees without holding a hearing. The Dumons' second assignment of error is sustained.

### Motion to Amend

**{¶37}** Finally, in their third assignment of error, the Non-Dumons argue that the trial court abused its discretion when it denied their motion to amend their answer. In their 2019 answer, the Non-Dumons failed to assert the failure of a condition precedent as a defense. In 2021, two months after the Beneficiaries and Non-Dumons filed competing motions for summary judgment, the Non-Dumons moved to amend their answer to include the failure of a condition precedent as a defense. The trial court denied the motion. We review the trial court's ruling for an abuse of discretion. *Henderson v. Dewine,* 1st Dist. Hamilton No. C-210201, 2022-Ohio-1025, ¶ 15.

**{¶38}** Under Civ.R. 15(A), a party "may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires." While leave should be freely given, "the trial court should

consider 'whether the movant made a prima facie showing of support for the new matters sought to be pleaded, the timeliness of the motion, and whether the proposed amendment would prejudice the opposing party.' " *Henderson* at ¶ 15, quoting *Maas v. Maas*, 2020-Ohio-5160, 161 N.E.3d 863, ¶ 84 (1st Dist.). Denying a motion to amend is proper "when the amendment sought would be futile." *Id.* at ¶ 16.

{¶39} The Non-Dumons' motion for leave to amend was untimely. *See McConaughy v. Boswell Oil Co.*, 126 Ohio App.3d 820, 831, 711 N.E.2d 719 (1st Dist.1998) (no abuse of discretion where a party "moved for amendment after the completion of discovery and after cross-motions for summary judgment had been filed."). And because the Guaranty did not contain a condition precedent, the amendment would have been futile. The trial court did not abuse its discretion and we overrule the Non-Dumons' third assignment of error.

## III. Conclusion

{¶40} For the reasons stated, we overrule the Dumons' first assignment of error and the Non-Dumons' first, second, and third assignments of error. But we sustain the Dumons' second assignment of error. We reverse the trial court's award of attorney fees and remand this case to the trial court to hold a hearing to determine whether the Beneficiaries' requested attorney fees are reasonable.

Judgment affirmed in part, reversed in part, and case remanded.

**BERGERON, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.